929 P.2d 372 (1997)
131 Wash.2d 78
The STATE of Washington, Respondent,
v.
Jody A. MILLER, Petitioner.
No. 63909-4.
Supreme Court of Washington, En Banc.
Argued October 23, 1996.
Filed January 16, 1997.
As Amended on Reconsideration in part February 7, 1997.
*373 Thomas E. Doyle, Robert M. Quillian, Olympia, for Petitioner.
Gary P. Burleson, Mason County Prosecutor, Eric Valley, Deputy, Shelton, for Respondent.
SMITH, Justice.
Petitioner Jody A. Miller seeks review of a decision of the Court of Appeals, Division II, concluding that omission of the element of delivery to a third person from a jury instruction defining the crime of conspiracy to deliver marijuana is harmless error. We granted review. We reverse the Court of Appeals.

QUESTION PRESENTED
The question presented in this case is whether it is harmless error for the trial court to instruct the jury on the crime of conspiracy to deliver marijuana without including the element of delivery to a third person.

STATEMENT OF FACTS
Petitioner Jody A. Miller is incarcerated in the Washington Corrections Center (WCC) at Shelton. His wife, Mrs. Laura A. Miller, came to the Center for a "family trailer visit"[1] with him on August 6, 1993. She brought along and secreted in an intimate body cavity two yellow balloons and a plastic bag filled with marijuana, a controlled substance. Once in the visitation trailer, she removed the objects from her body cavity and left them in the bathroom for her husband and told him where to find them. Petitioner Miller found the balloons and bag with marijuana. In order to avoid their discovery, he ate a portion of the substance, and swallowed the balloons and the plastic bag with the remainder of the marijuana.[2]
After Petitioner's wife left the family visitation trailer, he was removed from the trailer to a "dry watch cell," the authorities having reason to believe Petitioner should be placed on "dry cell watch."[3] Several hours *374 later, in the presence of two observing officers, Petitioner Miller coughed up the balloons and the plastic bag containing the marijuana.
Inspector John Geier and Detective Shane Brooks interviewed Petitioner's wife. She provided a written statement indicating it was her idea to bring the marijuana to Petitioner because she needed money, she paid $120 for the marijuana, and her husband told her he could sell it to other prisoners for $300. She was unavailable at trial. The court allowed the officers to relate the details of their interview with her.[4]
Inspectors Dean Mason and John Geier then interviewed Petitioner Miller. He told them a different story. He said he asked his wife to bring the marijuana to him so he could repay a drug debt to another prisoner. Although he admitted he gave his wife instructions for acquiring the marijuana, he would not provide any additional information to the investigators.[5]
On January 7, 1994, the Prosecuting Attorney filed in the Mason County Superior Court a second amended Information in three counts charging Petitioner with possession of marijuana with intent to deliver, conspiracy to deliver marijuana, and possession of a controlled substance in a correctional facility. The Information read in its entirety:[6]

COUNT I
That said defendant, JODY A. MILLER, in Mason County, Washington, on or about August 6, 1993, did knowingly possess a controlled substance with the intent to deliver such substance, to-wit: possessed marijuana with the intent to deliver it to other inmates of the Washington Correctional Center.
SPECIAL ALLEGATION: (RCW 9.94A. 310(4)(b)): [sic] The offense stated in Count I was committed while the defendant was in a state correctional facility.[7]

COUNT II
That said defendant, JODY A. MILLER, in Mason County, Washington, on or about the period between July 1, 1993 and August 6, 1993, with intent that conduct constituting the crime of delivery of marijuana be performed, agreed with another person to engage in or cause the performance of such conduct, to-wit: agreed with Laura Miller that Laura would bring marijuana into the Washington Corrections Center and the defendant would then deliver it to other inmates.

COUNT III
That said defendant, JODY A. MILLER, in Mason County, Washington, on or about August 6, 1993, while serving a sentence in a penal institution of this state, did, without authorization, knowingly possess or carry upon his person or had under his control a controlled substance, to-wit: marijuana.
Although the Information does not clearly specify it, Petitioner Miller was presumably charged under RCW 69.50.401 of the Uniform Controlled Substances Act which generally makes it "unlawful for any person to ... deliver, or possess with intent to ... deliver, a controlled substance." Marijuana is listed as a Schedule I controlled substance,[8] which subjects a person convicted under RCW 69.50.401 for its delivery or possession with *375 intent to deliver to penalties, including imprisonment for not more than five years.[9]
The criminal conspiracy statute, RCW 9A.28.040(1), provides that "[a] person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, ... [that person] agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." That statute was not indicated or referred to in the Information.
The conspiracy section of the Uniform Controlled Substances Act, RCW 69.50.407, merely states that "[a]ny person who ... conspires to commit any offense defined in this chapter" is punishable by specified penalties. That statute was one of three listed in the heading of the Information. But the word "conspiracy" appears nowhere in the Information.
At trial, Petitioner Miller claimed the investigators fabricated their testimony about his plan and intended delivery. He claimed he was surprised by his wife's "gift" of marijuana. He admitted that upon finding the marijuana he ate some of it so he "could get high, kick back and watch the game."[10] He said he believed that if he ate the marijuana it would be less detectable than if he had smoked it.[11] He also acknowledged that he swallowed the balloons and the plastic bag to prevent their discovery.[12]
The jury returned a verdict of "not guilty" on Count I, possession of marijuana with intent to deliver; a verdict of "guilty" on Count II, conspiracy to deliver marijuana; and a verdict of "guilty" on Count III, possession of a controlled substance in a correctional facility.[13] Petitioner was sentenced by the Honorable Toni A. Sheldon on February 17, 1994 to 5 years on each count to be served concurrently, but consecutive to the sentence Respondent was already serving.
Petitioner appealed his conviction for conspiracy to deliver marijuana to the Court of Appeals, Division II. He contended the jury instruction on conspiracy, Instruction 16,[14] was defective because the jury was not advised that the charge of conspiracy to deliver marijuana included the element of delivery to a third person. Petitioner argued that the error was prejudicial and the jury might have mistakenly based its guilty verdict on a determination that he conspired with his wife to deliver to himself and not to a third party.
The State relied upon State v. Guloy[15] to argue that any deficiency in Instruction 16 was insignificant harmless error because the State had indicated in its closing argument several times that Petitioner intended to make delivery of the marijuana to other prisoners.
On February 9, 1996 the Court of Appeals, in an unpublished opinion, Chief Judge Karen *376 G. Seinfield writing, noted that the erroneous instruction in State v. Valdobinos[16] is similar to the erroneous instruction in this case. The Court of Appeals then determined the error was harmless because in the Valdobinos case closing argument left no doubt that the charge involved a conspiracy between two persons with delivery to a third, and that in this case there was no irreconcilable inconsistency between the acquittal on the possession with intent to deliver count and the conviction on the conspiracy count because the jury could have decided that Petitioner Miller's intent to deliver marijuana to other prisoners was abandoned only after he had the substance in his possession and decided to keep it for his personal use.

DISCUSSION
Petitioner Miller contends before this court that the Court of Appeals erroneously concluded it was harmless error for the trial court to omit the element of delivery to a third person from the jury instruction on conspiracy to deliver marijuana. He argues that the crime of delivery requires participation of two persons, and that "if only those two persons are alleged to have participated in the illicit agreement, the charge of conspiracy cannot lie."[17] Petitioner argues that because Instruction 16 omitted the element of delivery to a third party, it was prejudicial to him and misled the jury into concluding there was a conspiracy between Petitioner and his wife without reference to any third party.
Respondent acknowledges the error in the instruction, but contends it is harmless because all the evidence at trial made it clear the conspiracy was between Petitioner and his wife, and the anticipated delivery involved Petitioner and another prisoner. Respondent argues it was clear the agreement between Petitioner and his wife was that Petitioner would deliver the marijuana his wife brought him to another prisoner (a third person).
Petitioner contends the trial judge improperly relied upon the fact the crime occurred within a correctional facility as an aggravating factor to justify imposition of a sentence beyond the standard range. He also claims the trial court erred in considering certain substantial and compelling reasons to justify an exceptional sentence: (1) an aggravating factor for one offense (conspiracy) as an element of another offense (delivery within a correctional facility) for which the defendant was convicted; (2) the conspiracy to deliver marijuana within a correctional facility; (3) the possession of a controlled substance within a correctional facility; (4) the possession of a controlled substance within a correctional facility required a high degree of planning; and (5) the possession of a controlled substance within a correctional facility involved an abuse of trust. While these questions were implicitly raised by Petitioner in an earlier proceeding in the Court of Appeals, counsel in oral argument before this Court indicated the sentencing issues had previously been resolved. We need not consider them now and we do not.
RCW 9A.28.040 makes an agreement between two or more persons a necessary element of the crime of conspiracy. The State made no reference to that statute in the Information. Also, an agreement to commit a crime is an essential part of a conspiracy.[18] A charge which does not connect a defendant with a specific co-conspirator is not maintainable under our conspiracy statutes.[19]
Petitioner apparently was charged under RCW 69.50.407, which prohibits any person from conspiring to commit an offense under the Uniform Controlled Substances Act.[20] Subsection 401 of the Act prohibits delivery of a controlled substance. RCW 69.50.101(f) *377 defines "delivery" as an actual transfer of a controlled substance from one person to another.
A conspiracy charge may be combined with a substantive offense. The courts have addressed mergers of conspiracy and substantive offenses. For example, in Iannelli v. United States, the United States Supreme Court stated:
Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes. Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act.... [T]he conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act.... [I]t is well recognized that in most cases separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end.[21]
Courts have recognized that the very nature of conspiracy poses threats to the public quite apart from those of the substantive offense. As indicated by the Supreme Court:[22]
This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreementpartnership in crimepresents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.[23]
The courts have generally left to legislatures the question whether the lawmakers intended punishment for a substantive offense to be exclusive of any punishment for a conspiracy to commit that offense.[24] "Wharton's Rule" is an exception to this general principle. It is not truly a rule, but more a concept, the contours of which have been marked out by the courts. Wharton's Rule emerged at a time when the contours of the law of conspiracy were being actively formulated.[25] Under this "rule," an agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require participation by those two persons for its commission.[26] The Supreme Court in Iannelli stated:
The classic Wharton's Rule offenses ... are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large.... [T]he agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert.[27]
*378 Wharton's Rule applies only to offenses which require concerted criminal activity. A closer relationship exists between the conspiracy and the substantive offense because both require collective criminal activity. Thus, absent legislative intent to the contrary, the Rule supports the presumption that the conspiracy and the substantive offense are merged when the substantive offense is proved.[28] When a substantive offense necessarily requires the concerted participation of two persons, the charge of conspiracy is merged into this concerted participation and will not be maintainable as a separate offense.[29] If a third person does participate in commission of the substantive offense, then all are guilty of conspiracy.[30]
An error infringing upon a defendant's constitutional rights is presumed to be prejudicial, and the State has the burden of proving the error was harmless.[31] The error cannot be declared harmless unless it was "harmless beyond a reasonable doubt."[32]
A "harmless error" is one which is "trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case."[33] An appellate court will consider such error only when giving or not giving an instruction invades a fundamental constitutional right of the accused and would probably change the result of the case.[34] That determination requires careful attention to the words actually used in the instruction because whether a defendant has been accorded full constitutional rights depends on the way a reasonable juror could have interpreted the instruction.[35] "A jury is not required to search other instructions to see if another element should have been included in the instruction defining the crime."[36]
The conspiracy instruction, Instruction Number 16, by not including the element of delivery to a third person, was erroneous and cannot be considered harmless because it affected the right of Petitioner to have the jury base its decision on an accurate statement of the law applied to the facts in the case.

SUMMARY AND CONCLUSION
The crime of delivery of a controlled substance necessarily requires participation of two persons. If only those two persons have participated in an illicit agreement, the charge of conspiracy cannot be maintained.[37] Where both delivery and conspiracy are alleged, the conspiracy must allege the involvement of a third person other than those involved in the delivery.[38]
There can be no conviction for conspiracy to deliver a controlled substance unless there is evidence of delivery or intent to deliver to a third person. The record in this case does not support a conclusion beyond a reasonable doubt that marijuana was intended to be delivered or was delivered to a third person. The jury found Petitioner Miller "guilty" of conspiracy to deliver a controlled substance even though the trial court did not instruct the jury it had to determine from the evidence that Petitioner intended to deliver or did deliver marijuana to another person.
*379 The Mason County Superior Court erred in omitting the element of delivery to a third person from the jury instruction on conspiracy to deliver marijuana. A charge of conspiracy to deliver a controlled substance requires that a third person be involved in the conspiracy. Omission of reference to a third person in a jury instruction on conspiracy to deliver marijuana is a significant and material omission. It is thus not harmless error.
We reverse the Court of Appeals, Division II, which affirmed the Mason County Superior Court conviction of Petitioner Jody A. Miller for conspiracy to deliver marijuana, and remand to the Superior Court. Petitioner did not appeal his conviction for possession of a controlled substance in a correctional facility. That conviction and the attendant sentence therefore stands.
DURHAM, C.J., and DOLLIVER, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] "Family trailer visit" is a procedure under which immediate family members of a prison resident may have unsupervised contact with the resident alone in a trailer within a secure perimeter on the institution grounds.
[2] Transcript of Trial Court Proceedings, vol. II at 173.
[3] "Dry cell watch" is a search procedure used to recover any contraband prisoners may have secreted on or in their bodies. The prisoner is placed in a suit locked at the wrists and at the ankles, zipped up the back and locked. The prisoner is placed in a room. An officer is present at all times and positioned in the room to allow eye-to-eye contact with the prisoner. The officer observes and writes down all actions and statements made by the prisoner in a Dry Cell Search Watch Log. If the prisoner needs to go to the bathroom for bodily relief, the observing officer must be informed. The officer must then observe and must recover any contraband which emerges in the excretory process.
[4] Although objection to this testimony was made at trial, it was not raised as an issue on appeal. See RCW 5.60.060(1) relating to privileged communications between spouses.
[5] Transcript of Trial Court Proceedings, vol. II at 128, 129.
[6] Clerk's Papers at 45, 46.
[7] The special allegation erroneously cited the weapons enhancement statute. The Information does not otherwise under each count cite statutes upon which the charges were based. However, the Judgment and Sentence signed by the trial court on February 17, 1994 cited RCW 69.50.407 for Count II (conspiracy to deliver marijuana) and RCW 9.94.041 for Count III (possession of controlled substance in correctional facility). Petitioner does not complain of any defect in the Information. See State v. Grant, 89 Wash.2d 678, 686, 575 P.2d 210 (1978); State v. Leach, 113 Wash.2d 679, 782 P.2d 552 (1989).
[8] RCW 69.50.204(c)(14).
[9] The Information somewhat loosely lists in the heading under the cause number RCW 69.50.401(a)(ii), RCW 69.50.407 and RCW 9.94.041.
[10] Transcript of Trial Court Proceedings, vol. II at 173.
[11] Transcript of Trial Court Proceedings, vol. II at 162.
[12] Transcript of Trial Court Proceedings, vol. II at 167, 168.
[13] Clerk's Papers at 10-12.
[14] Instruction 16 reads:

To convict the defendant of the crime of Conspiracy to Deliver Marijuana, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about the period between July 1, 1993 and August 6, 1993, the defendant agreed with another person to engage in or cause the performance of conduct constituting the crime of Delivery of Marijuana.
(2) That the defendant acted with the intent that such conduct be performed.
(3) That the acts occurred in Mason County, Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.
Clerk's Papers at 33.
[15] 104 Wash.2d 412, 705 P.2d 1182 (1985) (The appellate court may avoid reversal on merely technical or academic grounds while insuring that a conviction will be reversed where there is any reasonable possibility that the use of inadmissible evidence was necessary to reach a guilty verdict.)
[16] 122 Wash.2d 270, 858 P.2d 199 (1993).
[17] Valdobinos, 122 Wash.2d at 280, 858 P.2d 199.
[18] State v. Dent, 123 Wash.2d 467, 869 P.2d 392 (1994).
[19] State v. Valladares, 99 Wash.2d 663, 664 P.2d 508 (1983).
[20] RCW 69.50.
[21] Iannelli v. United States, 420 U.S. 770, 777-78, 95 S.Ct. 1284, 1289-90, 43 L.Ed.2d 616 (1975).
[22] Id. at 778, 95 S.Ct. at 1289-90.
[23] Id. at 778, 95 S.Ct. at 1289-90 (quoting Callanan v. United States, 364 U.S. 587, 593-94, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961)).
[24] 1 Ronald A. Anderson, Wharton's Criminal Law and Procedure § 89, at 191 (1957).
[25] Iannelli, 420 U.S. at 781, 95 S.Ct. at 1291-92.
[26] 1 Ronald A. Anderson, Wharton's Criminal Law and Procedure § 89, at 191 (1957).
[27] Iannelli, 420 U.S. at 782-83, 95 S.Ct. at 1292-93 (footnotes omitted).
[28] Iannelli, 420 U.S. at 785, 95 S.Ct. at 1293.
[29] State v. Langworthy, 92 Wash.2d 148, 594 P.2d 908 (1979).
[30] 1 Ronald A. Anderson, Wharton's Criminal Law and Procedure § 89, at 191 (1957).
[31] State v. Caldwell, 94 Wash.2d 614, 618 P.2d 508 (1980).
[32] State v. Stephens, 93 Wash.2d 186, 191, 607 P.2d 304 (1980); State v. Aumick, 126 Wash.2d 422, 894 P.2d 1325 (1995).
[33] State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977).
[34] State v. Pam, 98 Wash.2d 748, 659 P.2d 454 (1983).
[35] Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
[36] Aumick, 126 Wash.2d at 431, 894 P.2d 1325.
[37] State v. Langworthy, 92 Wash.2d 148, 594 P.2d 908 (1979).
[38] Valdobinos, 122 Wash.2d at 280, 858 P.2d 199.