998 P.2d 296 (2000)
140 Wash.2d 420
STATE of Washington, Respondent,
v.
Jason J. McCARTY, Petitioner.
No. 67902-9.
Supreme Court of Washington, En Banc.
Argued January 13, 2000.
Decided April 27, 2000.
*297 Thomas E. Doyle, Hansville, Patricia A. Pethick, Tacoma, Robert M. Quillian, Olympia, for Petitioner.
Ed Holm, Thurston County Prosecutor, John M. Jones, Deputy Thurston County Prosecutor, Olympia, for Respondent.
SANDERS, J.
We here review an unpublished decision of the Court of Appeals, Division Two, which affirmed Jason McCarty's Thurston County conviction for conspiracy to deliver a controlled substance. State v. McCarty, Nos. 210959-II, 22303-1-II, 94 Wash.App. 1026, 1999 WL 124444 (Wash.Ct.App. Mar. 5, 1999). McCarty claims the information charging him with the conspiracy was fatally defective for want of an essential element. We agree and reverse.

FACTS
This case arises from a plan to sell a mythical one half pound of methamphetamine in mid-June 1995 for $2,500. In addition to the Thurston County Sheriff's Office and Thurston County Narcotics Task Force, the arrangement involved an ensemble cast including Jason McCarty, an Olympia attorney; Don Jordan, a police informant; Ivan Yoder, an incarcerated felon; Jerome Moore, an intermediary; and Rebecca "Becky" Andrade, a bit player.
At least as early as spring 1995, police and prosecutors in Thurston County began to suspect McCarty of dealing drugs with and *298 through his longtime client, Ivan Yoder. Detective Donald Heinz of the Thurston County Sheriff's Office began investigating McCarty based on information given to him by Don Jordan, his informant. Jordan told Detective Heinz he thought McCarty would accept drugs or drug money as part of a retainer for legal services. After speaking with Detective Heinz, Jordan called McCarty and arranged to meet with him in his Olympia office to discuss hiring McCarty as his attorney. Jordan later reported to Detective Heinz that he was meeting with McCarty and believed McCarty would agree to accept drugs or drug money as a retainer.
Jordan met with McCarty in McCarty's office on June 13, 1995, apparently to discuss hiring him to appear in a hearing to recover possession of a house belonging to Jordan's mother, which had been seized in a drug raid. Jordan testified at trial that he told McCarty:
I was short of cash but that I had a couple hundred dollars on me and I had a half pound of methamphetamine that I needed to get rid of, that I had come up here to see a fellow named Ivan Yoder but Yoder was now in jail and I had no way to get rid of it.
Verbatim Report of Proceedings (RP) (Mar. 12, 1996) at 124. Jordan further asked McCarty if he would contact Yoder and tell him Jordan needed to see him "so I could dump this off and get the retainer money." Id. Yoder was incarcerated in the Thurston County jail awaiting trial on several pending felony charges.
McCarty told Jordan he would discount his usual fee of $5,000 for such a matter to $2,500 because Jordan was a friend of Yoder's. Jordan advised McCarty that the $2,500 would come from the sale of the drugs. Jordan related this conversation to Detective Heinz and then set out to meet Yoder at the county jail.
When Jordan arrived at the jail that evening, Yoder advised him that he had already met with McCarty and was aware of Jordan's methamphetamine. Also present during this meeting was Rebecca "Becky" Andrade, whose ultimate role in the conspiracy the record leaves opaque.
At first Yoder instructed Jordan to use Becky as an intermediary to sell the drugs. During a telephone conversation the following morning, however, Yoder advised Jordan not to use Becky to consummate the sale, but rather to expect contact from Jerome Moore, another of Yoder's associates, who would pay Jordan for the drugs. Jordan reminded Yoder that he needed the $2,500 to pay McCarty, and Yoder replied that he would speak with McCarty and assure him the money would be coming.
Moore contacted Jordan moments after this telephone conversation ended, and arranged for the methamphetamine sale. Moore told Jordan he was in contact with Yoder and could take possession of the drugs for Yoder. As Moore was on electronic home monitoring, he requested Jordan come to his house to complete the transaction.
Several telephone calls ensued between McCarty, Moore, and Jordan. McCarty called Moore and asked whether he had contacted Jordan. An envelope with Moore's telephone number written on it was subsequently found by police in McCarty's home. McCarty also called Jordan and indicated Yoder "cosigned" for Moore, indicating to Jordan that he was a "good guy," and "part of the circle." RP at 140.
Jordan made arrangements with McCarty to meet at 9:40 p.m. that day at the Tumwater Inn after learning the deal between Jordan and Moore "was going down." RP at 143. The two met that evening and Jordan gave McCarty $2,500, telling him that's a "heck of a price" for a half pound of methamphetamine. RP at 143. McCarty asked "if the buyer was happy." Id. After the meeting, members of the Thurston County Narcotics Task Force moved in and arrested McCarty in his car. The $2,500 was provided by the police, who had also equipped Jordan with a wire to record his conversation with McCarty. A tape of the conversation was played to the jury.
McCarty was charged on September 8, 1995, with two counts of money laundering and conspiracy to deliver a controlled substance. The money laundering counts were severed from the conspiracy count and a *299 separate trial, not at issue in this appeal, was held on those charges. McCarty was tried on the conspiracy charge on March 11, 1998, and the jury convicted him on March 18, 1998.
The information charging McCarty with conspiracy read in full:

COUNT III  CONSPIRACY TO DELIVER A CONTROLLED SUBSTANCE, RCW 69.50.401(a)(1)(i) and 69.50.407:
That the defendant, JASON J. McCARTY, in the County of Thurston, State of Washington, on or about the 14th day of June, 1995, did unlawfully conspire to deliver a controlled substance, to-wit: METHAMPHETAMINE; contrary to RCW 69.50.401(a)(1)(i) and 69.50.407 and against the peace and dignity of the State of Washington.
Clerk's Papers (CP) at 3. McCarty did not challenge the information at trial, but challenged its sufficiency for the first time on appeal.

ISSUE
The sole issue before the court is whether the information charging McCarty with conspiracy to deliver methamphetamine is fatally defective because it omits a necessary element of the crime, viz., an allegation of the involvement of a person outside the agreement to deliver drugs.

DISCUSSION
McCarty contends that the information unconstitutionally failed to allege a necessary common law element: that he agreed with persons involved outside the act of delivery to engage in or cause the performance of a crime. State v. Valdobinos, 122 Wash.2d 270, 280, 858 P.2d 199 (1993). U.S. Const. amend. 6 requires that "[i]n all criminal prosecutions, the accused shall ... be informed of the nature and cause of the accusation...." Const. art. I, § 22 (amend.10) further states that "[i]n criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation against him...." Therefore an accused has a protected right, under our state and federal charters, to be informed of the criminal charge against him so he will be able to prepare and mount a defense at trial. State v. Bergeron, 105 Wash.2d 1, 18, 711 P.2d 1000 (1985). Every material element of the charge, along with all essential supporting facts, must be put forth with clarity. CrR 2.1(a)(1); State v. Kjorsvik, 117 Wash.2d 93, 97, 812 P.2d 86 (1991).
It is a well-settled rule that a charging document satisfies these constitutional principles only if it states all the essential elements of the crime charged, both statutory and nonstatutory. Kjorsvik, 117 Wash.2d at 97, 812 P.2d 86; State v. Vangerpen, 125 Wash.2d 782, 787, 888 P.2d 1177 (1995). If a charging document is challenged for the first time on review, however, it will be construed liberally and will be found sufficient if the necessary elements appear in any form, or by fair construction may be found, on the face of the document. Kjorsvik, 117 Wash.2d at 105, 812 P.2d 86. However we note that "`[i]f the document cannot be construed to give notice of or to contain in some manner the essential elements of a crime, the most liberal reading cannot cure it.'" State v. Moavenzadeh, 135 Wash.2d 359, 363, 956 P.2d 1097 (1998) (quoting State v. Campbell, 125 Wash.2d 797, 802, 888 P.2d 1185 (1995)).
Thus reading the information liberally, we employ the Kjorsvik two-prong test: (1) do the necessary elements appear in any form, or by fair construction can they be found, in the information, and if so (2) can the defendant show he or she was actually prejudiced by the inartful language. Kjorsvik, 117 Wash.2d at 105-06, 812 P.2d 86. If the necessary elements are not found or fairly implied, however, we presume prejudice and reverse without reaching the question of prejudice. Id. See also City of Auburn v. Brooke, 119 Wash.2d 623, 636, 836 P.2d 212 (1992) (one does not reach question of prejudice unless there is some language in the document, however inartful, relating to the necessary elements).
McCarty argues the information is deficient because on its face it fails to allege the involvement of more than two people. We agree. Conspiracy to deliver a controlled substance, unlike conspiracy in general, *300 necessarily requires the involvement of at least three people because the crime of delivery itself necessarily involves two people. Thus a document charging conspiracy to deliver a controlled substance must allege that persons involved outside the act of delivery took part in the conspiracy agreement.[1]Valdobinos, 122 Wash.2d at 280, 858 P.2d 199; State v. Miller, 131 Wash.2d 78, 91, 929 P.2d 372 (1997).
The Court of Appeals disagreed, holding:
Liberally construed, the information alleging that he "did unlawfully conspire to deliver a controlled substance" necessarily implies a conspiracy of two or more persons to commit a crime, and necessarily includes the implied fact that one of them took a substantial step to further the crime. But even if we were persuaded that the information is lacking, McCarty fails to identify any prejudice whatever. He knew the State's theory of the case from the start. The jury was instructed that he had to conspire with two or more persons. Both in opening statement and closing argument, the prosecutor outlined the State's proof of a conspiracy involving McCarty and four other persons Jordan, Yoder, Moore, and Becky Andrade.
State v. McCarty, Nos. 21095-9-II, 22303-1-II, slip op. at 9, 94 Wash.App. 1026, 1999 WL 124444 (Wash.Ct.App. Mar. 5, 1999) (footnotes omitted).
Despite the dissent's claim the above-stated holding is "unimpeachable," Dissent at 304, the court below simply misstated the law in the following ways:
First, the Court of Appeals failed to take into account the necessity of the involvement of a third person in the crime of conspiring to deliver. Nothing in the conclusory language of the information, however liberally construed, could imply anything more than a simple conspiracyan agreement between two or more people to commit a crime. RCW 9A.28.040(1). Although the use of the term "conspiracy" implies the involvement of two or more people, in the context of delivery of a controlled substance, it does not imply involvement of a party acting outside the incident of delivery.
Second, the mere use of the term "conspiracy" does not "necessarily impl[y]," as the Court of Appeals held, State v. McCarty, slip op. at 9, that any member of the conspiracy took a substantial step in furtherance of the agreement. The mere existence of an agreement implies nothing about whether any of the conspirators acted on it.
Third, the Court of Appeals' argument that McCarty was put on fair notice of the charges against him"He knew the State's theory of the case from the start," id.because of statements made during opening statements, closing arguments, and jury instructions, is flawed. Surely to ensure due process, the notice of the charge on which a defendant will be tried must logically be given at some point prior to the opening statement of the trial! See Vangerpen, 125 Wash.2d at 787, 888 P.2d 1177 ("[A]n accused must be in-formed of the criminal charge he or she is to meet at trial and cannot be tried for an offense which has not been charged.").
*301 Fourth, the "even if" alternative holding of the Court of Appeals misstates the law governing the review of charging documents first challenged on appeal. As noted above, inconsistent with the Dissent at 301, we look at prejudice only if the necessary elements of the crime are first found through liberal construction in the language of the charging document. If, as is the case here, the necessary elements are neither explicitly stated nor fairly implied, reversal follows without any inquiry into the prejudice to the defendant. Brooke, 119 Wash.2d at 638, 836 P.2d 212. Therefore the Court of Appeals is simply wrong that its holding could be grounded on a lack of actual prejudice even if the information was found lacking. State v. McCarty, slip op. at 9.

CONCLUSION
Because the information, liberally construed and subject to the Kjorsvik two-prong test, fails on its face to set forth the essential common law element of involvement of a third person outside the agreement to deliver drugs, we presume prejudice and reverse the decision of the Court of Appeals. McCarty's conviction is thus dismissed without prejudice to subsequent prosecution based upon a new information. Brooke, 119 Wash.2d at 640, 836 P.2d 212.
SMITH, JOHNSON, MADSEN, and ALEXANDER, JJ., concur.
TALMADGE, J. (dissenting).
Attorney Jason McCarty was convicted by a jury of his peers of conspiracy to deliver methamphetamines. The parties all concede the jury that convicted McCarty was properly instructed by the trial court on the elements of the crime of conspiracy under Washington law; the jury obviously found the State proved all the elements of conspiracy beyond a reasonable doubt. Only after his conviction, and for the first time on appeal, McCarty contends the information charging him with conspiracy was fatally defective. Yet McCarty does not claim his defense to conspiracy was in any way affected or prejudiced by this allegedly defective information. Notwithstanding these facts, and despite its admirable presentation of the facts establishing McCarty's guilt, the majority opines the jury's decision must be reversed and the case retried, presumably on the same facts and jury instructions as to conspiracy to deliver a controlled substance. This makes no sense. I dissent.
The starting place for our treatment of the issues here is in article I, sections 3 and 22 of the Washington Constitution and the fifth, sixth, and fourteenth amendments to the United States Constitution. In particular, the sixth amendment requires, at a minimum, the accused shall be informed of "the nature and cause of the accusation" and article I, section 22 mandates the accused be apprised of "the nature and cause of the accusation" against him or her. The essential concern is due process. The accused must have proper notice of the State's charges in order to be able fairly to prepare and present a defense. State v. Kjorsvik, 117 Wash.2d 93, 101, 812 P.2d 86 (1991); State v. Bergeron, 105 Wash.2d 1, 18, 711 P.2d 1000 (1985).
The majority says:
Conspiracy to deliver a controlled substance, unlike conspiracy in general, necessarily requires the involvement of at least three people because the crime of delivery itself necessarily involves two people. Thus a document charging conspiracy to deliver a controlled substance must allege that persons involved outside the act of delivery took part in the conspiracy agreement.
Majority op. at 300. The first sentence is correct: "There can be no conviction for conspiracy to deliver a controlled substance unless there is evidence of delivery or intent to deliver to a third person." State v. Miller, 131 Wash.2d 78, 91, 929 P.2d 372 (1997). But the second sentence is a complete non sequitur: if a conspiracy to deliver a controlled substance necessarily implies the involvement of at least three people as a matter of law, there is no constitutional obligation to state as much in the information. An information charging a defendant with "conspiracy to deliver a controlled substance" on its face tells the defendant three or more people must have been involvedtwo who conspire *302 to deliver, and one or more who takes delivery. The charge itself gives the defendant all the information needed to mount a defense in this case, that the State will have to prove the involvement of at least two people in addition to the defendant. Our federal and State constitutions do not require more.
The source of the majority's error is not in its choice of authority, State v. Valdobinos, 122 Wash.2d 270, 280, 858 P.2d 199 (1993), and Miller, 131 Wash.2d at 91, 929 P.2d 372, but in its backward interpretation of those cases. Those cases concerned jury instructions, not charging documents. The difference is crucial. A jury instruction informs the jury what the State must prove to convict; a proper charge in an information informs the defendant what the State will attempt to prove to convict.
In Valdobinos, we found the following "to convict" instruction erroneous: "That between the 9th and 13th days of December, 1990, the defendant agreed with one or more persons to engage in or cause the performance of conduct constituting the crime of Delivery of A Controlled Substance[.]" 122 Wash.2d at 280, 858 P.2d 199. The flaw in the instruction, we noted, was the failure to require the jury to find there was a third person involved. Thus, the jury might have convicted after finding the defendant and only one other person were parties to the conspiracy to deliver, when the crime of Conspiracy to Deliver a Controlled Substance requires involvement of three or more persons. We said, "[W]here both delivery and conspiracy are alleged, the conspiracy must allege the involvement of a person additional to those involved in the delivery."[1]Id.
Valdobinos is correct insofar as "to convict" jury instructions are concerned. "The basic purpose of instructions is to enunciate the essential elements of the legal rules necessary for a jury to reach a verdict." Harris v. Robert C. Groth, M.D., Inc., 31 Wash.App. 876, 881, 645 P.2d 1104 (1982), aff'd, 99 Wash.2d 438, 663 P.2d 113 (1983). In Valdobinos and Miller, the challenged jury instructions omitted the element of delivery to a third person, and were therefore defective.[2]
Jury instructions must be exactingly precise, both as to the law and as to the facts the jury must find to convict. A charge against a defendant must also be precise, but neither the federal nor the State constitutions require charges to contain the detail of a jury instruction. All that is necessary is for the defendant to be fairly informed of the charges against him or her. The charge, "Conspiracy to Deliver a Controlled Substance," is both necessary and sufficient to inform a defendant the State must prove three or more persons were involved in the crime.
Thus, the majority is mistaken when it says, "Nothing in the conclusory language of the information, however liberally construed, could imply anything more than a simple conspiracyan agreement between two or more people to commit a crime." Majority op. at 300. The challenged charge here was not simple conspiracy; the charge was conspiracy to deliver. Under Valdobinos, a conspiracy to deliver implicates at least three people.[3] I would affirm the Court of Appeals and uphold McCarty's conviction.
The majority's confusion and conflation of a jury instruction with a criminal charge is symptomatic of carrying a good and important concepta constitutionally adequate information too far. I therefore take this opportunity to review our approaches to the question.
*303 While some of our cases have suggested the information must contain a recitation of each element of the crime to pass constitutional muster, State v. Holt, 104 Wash.2d 315, 704 P.2d 1189 (1985), other of our cases have strongly indicated the so-called essential elements test is more factually oriented. For example, in State v. Leach, 113 Wash.2d 679, 689, 782 P.2d 552 (1989), citing cases dating from territorial days, we said:
It may be concluded from these authorities that the "essential elements" rule requires that a charging document allege facts supporting every element of the offense, in addition to adequately identifying the crime charged. This is not quite the same as a requirement to "state every statutory element of the crime charged, as suggested in State v. Holt, 104 Wash.2d 315, 320, 704 P.2d 1189 (1985). However, any impression in delineating the "essential elements" rule in Holt does not alter our conclusions in the two cases we now decide.
(Court's emphasis.)
Subsequently, in Kjorsvik, 117 Wash.2d at 101-02, 812 P.2d 86, we held the information must include all essential elements of the crime, both statutory and nonstatutory. However, we also provided for a different test for constitutional sufficiency of the information where the accused first challenged the information on appeal. The federal courts have applied a rule of liberal construction that looks to the facts underlying the charge against the accused:
Upon a proceeding after verdict at least, no prejudice being shown, it is enough that the necessary facts appear in any form, or by fair construction can be found within the terms of the indictment.
Hagner v. United States, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861 (1932). Our own formulation of the liberal construction rule is less liberal, looking to the elements of the crime:
A close reading of the federal cases shows that the federal standard is, in practice, often applied as a 2-prong test: (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?
The standard of review we here adopt will require at least some language in the information giving notice of the allegedly missing element(s) and if the language is vague, an inquiry may be required into whether there was actual prejudice to the defendant. The second prongallowing the defendant to show that actual prejudice resulted from inartful or vague language affords an added layer of protection to a defendant even where the issue is first raised after verdict or on appeal.
The first prong of the testthe liberal construction of the charging document's languagelooks to the face of the charging document itself. The second or "prejudice" prong of the test, however, may look beyond the face of the charging document to determine if the accused actually received notice of the charges he or she must have been prepared to defend against. It is possible that other circumstances of the charging process can reasonably inform the defendant in a timely manner of the nature of the charges. This 2-prong standard of review strikes a balance: on the one hand it discourages the defense from postponing a challenge to the charge knowing the charging document is flawed; on the other hand, it insures that the State will have given fair notice of the charge to the defendant.
Kjorsvik, 117 Wash.2d at 105-06, 812 P.2d 86 (footnotes omitted).
In the cases arising since the adoption of the liberal construction test, we have noted the information must be read as a whole, in a commonsense manner, from the perspective of a person of common understanding rather than a legal expert. Valdobinos, 122 Wash.2d at 286, 858 P.2d 199.
It is ironic that our court rules appear to be inconsistent with our decisional law on the adequacy of an information. CrR 2.1(a) states:
(a) Use of Indictment or Information. The initial pleading by the State shall be *304 an indictment or an information in all criminal proceedings filed by the prosecuting attorney.
(1) Nature. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the prosecuting attorney. Allegations made in one count may be incorporated by reference in another count. It may be alleged that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice.
(2) Contents. The indictment or the information shall contain or have attached to it the following information when filed with the court:
(i) the name, address, date of birth, and sex of the defendant;
(ii) all known personal identification numbers for the defendant, including the Washington driver's operating license (DOL) number, the state criminal identification (SID) number, the state criminal process control number (PCN), the JUVIS control number, and the Washington Department of Corrections (DOC) number.
This rule seems to be more in tune with Leach and does not appear to contemplate the kind of code pleading approach to informations that has become the sine qua non of our criminal jurisprudence.
An accused is also afforded significant opportunities to flesh out the State's charges if a concern arises before trial regarding their adequacy. CrR 2.1(c) allows the accused to seek a bill of particulars. CrR 4.7 affords the accused discovery regarding the State's case. Moreover, if the State's case is flawed as a matter of law, the accused may seek its dismissal. State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986).
In the present case, McCarty was silent pretrial and during trial regarding the adequacy of the information. He offers no evidence of prejudice to his trial preparation or conduct of the trial arising from the allegedly inadequate information. He filed no Knapstad motion. He knew precisely what the State was contending at trial and did not object to the instruction to the jury on the elements of conspiracy.
The logic of the Court of Appeals' opinion below is unimpeachable when it states:
Liberally construed, the information alleging that he "did unlawfully conspire to deliver a controlled substance" necessarily implies a conspiracy of two or more persons to commit a crime, and necessarily includes the implied fact that one of them took a substantial step to further the crime. But even if we were persuaded that the information is lacking, McCarty fails to identify any prejudice whatever. He knew the State's theory of the case from the start. The jury was instructed that he had to conspire with two or more persons. Both in opening statement and closing argument, the prosecutor outlined the State's proof of a conspiracy involving McCarty and four other personsJordan, Yoder, Moore, and Becky Andrade.
State v. McCarty, Nos. 21095-9-II, 22303-1-II, slip op. at 9, 94 Wash.App. 1026, 1999 WL 124444 (Wash.Ct.App. Mar. 5, 1999) (footnotes omitted).
A sporting theory of justice should not be the basis for our criminal jurisprudence.[4] If *305 we are to apply our law in a commonsense fashion, without divorcing it from reality, we must keep in mind the salutary function of a charging document, and not confuse it with a precisely crafted jury instruction. I would affirm the jury's conviction of McCarty.
GUY, C.J., IRELAND, and BRIDGE, JJ., concur.
NOTES
[1] The dissent urges a simple allegation of "Conspiracy to Deliver a Controlled Substance" would have been constitutionally sufficient because "[t]he charge itself gives the defendant all the information needed to mount a defense," Dissent at 301, claiming all facts necessarily required to make out a charge of conspiracy to deliver must be "necessarily implie[d]," id., in the charge. Although such a conspiracy "necessarily requires" the participation of at least three people, a constitutionally sufficient charging document must expressly state all essential elements of a crime, both statutory and nonstatutory, Kjorsvik, 117 Wash.2d at 101-02, 812 P.2d 86, to pass muster.

Furthermore, the dissent claims our reliance upon Valdobinos and Miller misses a "difference [that] is crucial" between charging documents and jury instructions, Dissent at 301, asserting jury instructions, apparently unlike charging documents, must be "exactingly precise." Dissent at 302. Jury instructions are sufficient if they "correctly state applicable law, are not misleading, and permit counsel to argue their theory of the case." State v. Brown, 132 Wash.2d 529, 618, 940 P.2d 546 (1997). However since both charging documents and jury instructions must identify the essential elements of the crime for which the defendant is charged (information) and tried (jury instructions), the dissent's distinction is without a difference.
[1] The syntax in this sentence is imprecise. A "conspiracy" cannot allege anything. In context a review of the challenged jury instruction a more accurate expression of the evident meaning the writer intended to convey might be: "Where both delivery and conspiracy are charged, the State must prove three or more persons were involved in order for the defendant to be found guilty of Conspiracy to Deliver a Controlled Substance."
[2] In Valdobinos, we held the omission was harmless error. In Miller we held the omission was prejudicial.
[3] On its face, the phrase "conspiracy to deliver" could possibly mean two people conspiring to deliver contraband. That is not our law, however. Valdobinos and Miller control here. The words "conspiracy to deliver" implicate three or more persons.
[4] At oral argument, in answer to the question whether McCarty should have objected to the allegedly defective charge, counsel candidly answered it would not be in the best interests of a defendant to make such an objection. To paraphrase counsel's remarks: were a defendant to object, the State would simply amend the information to cure the defect. Curing the defect would deprive the defendant of an appealable issue, i.e., the defective information. We should not countenance and reward such cynical gaming of our criminal justice system by creating hypertechnical loopholes.