[No. 18999-6-III.   Division Three.   October 25, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. FERNANDO MENDOZA-SOLORIO, *Appellant*.

---

*Paul J. Wasson II*, for appellant.

*James P. Hagarty*, *Prosecuting Attorney*, and *Timothy S. O'Neill*, *Deputy*, for respondent.

BROWN, J. — Fernando Mendoza-Solorio, convicted of one count of delivery of a controlled substance and one count of conspiracy to deliver a controlled substance, appeals, alleging first, the charging document failed to allege an essential element of conspiracy to deliver, and second, improper vouching by a State's witness. The State concedes the charging error, but uniquely asks to supplement the record to cure the defect. We decline to establish a rule permitting supplementation at this stage. We decide any vouching was harmless under these facts. Accordingly, we reverse the conspiracy conviction without prejudice, and affirm the delivery conviction.

## FACTS

Mr. Mendoza-Solorio was charged with count I, delivery of a controlled substance (methamphetamine) and count II, conspiracy to deliver a controlled substance (methamphetamine). Count II alleged:

> That he, FERNANDO MENDOZA-SOLORIO aka FERNANDO SOLORIO MADRIGAL, in the County of Klickitat, State of Washington, on or about the period of July 1, 1999 through July 29, 1999, did conspire to deliver a Schedule II controlled substance, to-wit: methamphetamine; contrary to RCW 69.50-.401(a)(1) and 69.50.407.

Clerk's Papers (CP) at 2.

Prior to confidential informant Gene Sharpe's testimony, Klickitat County Deputy Roy A. Brown partly testified:

> [Prosecutor]: Was a confidential informant used in this, um, this controlled buy?
>
> Deputy Brown: Yes it was. Actually a confidential, reliable informant.
>
> [Prosecutor]: O-kay. Uh, and the name of the confidential informant?

Deputy Brown: The name of the confidential, reliable informant is Gene Sharpe.

Report of Proceedings (RP) at 14.

Deputy Brown testified he sent Mr. Sharpe to Bobby Atkisson's residence to obtain drugs through a controlled buy. Mr. Sharpe spoke to Mr. Atkisson but was told the drugs were then unavailable and to return later. In an hour, Mr. Sharpe returned and obtained contraband drugs. In response to a prosecution question regarding whether Mr. Sharpe had ever "held back," Deputy Brown stated: "Mr. Sharpe has been extremely honest and reliable to us. Uh, he's never lied to me as far as I know." RP at 24. Defense counsel did not object.

Mr. Sharpe testified he went to Bobby Atkisson's house for the purpose of the controlled buy operation described by Deputy Brown. When Mr. Sharpe arrived, Mr. Atkisson told him the people who had the methamphetamine were not there and to come back in about an hour. After returning to Mr. Atkisson's house, Mr. Mendoza-Solorio and his brother arrived. Mr. Atkisson introduced Mr. Sharpe to the two men and said Mr. Sharpe was there to buy methamphetamine. Mr. Mendoza-Solorio told Mr. Atkisson, "Well, you know where it is. You can get it." RP at 40. Mr. Atkisson told Mr. Mendoza-Solorio he waited because he did not want to get into his things.

Mr. Sharpe then testified he followed Mr. Mendoza-Solorio to a bedroom where Mr. Mendoza-Solorio recovered a bag of methamphetamine. Mr. Atkisson then weighed the drug on his own scale, put the amount Mr. Sharpe was purchasing in a plastic bag, and handed the bag to Mr. Mendoza-Solorio. Mr. Atkisson asked if he could have a piece of the drug. After Mr. Sharpe agreed, Mr. Atkisson broke off a piece, put the rest in a plastic bag, and handed it to Mr. Sharpe. According to Mr. Sharpe, Mr. Mendoza-Solorio was the person in charge. Mr. Mendoza-Solorio kept the undelivered drugs and accepted the buy money while

Mr. Atkisson weighed the delivered drugs.

Klickitat County Detective Frank Randall described the controlled buy operation in a manner consistent with Deputy Brown. Detective Randall introduced evidence indicating the substance recovered had tested positive for methamphetamine.

After the State had rested, the trial court denied Mr. Mendoza-Solorio's motion to dismiss the conspiracy count for insufficient evidence. No objection was made at any time to the form of the information. Mr. Mendoza-Solorio rested without calling any witnesses. The jury found Mr. Mendoza-Solorio guilty on both counts. Mr. Mendoza-Solorio appealed.

During preliminary proceedings in this court, it became apparent that the parties essentially agreed the conspiracy allegations in the information lacked a required element, the identity of the alleged conspirator. Normally, this oversight would dictate reversal on that charge without prejudice to retrial under *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). However, the State then moved to supplement the record with additional documents seeking to establish Mr. Mendoza-Solorio's knowledge of the conspirator's identity.

## ISSUES

The first issue is whether under the liberal standard for reviewing a charging document omitting an essential crime element that is challenged for the first time on appeal, the State may cure the defect by showing the defendant received other information giving notice of the missing element. Next, we decide whether under these facts a State witness improperly vouched for the confidential informant's credibility, and if so, whether the error was harmless.

ANALYSIS

A. Omitted Element

When the State neglects to include an essential element of the charged crime in the charging document, and the defendant raises the issue for the first time on appeal, can the State show that the defendant received notice of the missing element by way of extrinsic information? The State, relying on its own interpretation of *State v. McCarty*, 140 Wn.2d at 425, argues it can, and moves to supplement the record with various pleadings setting forth facts relevant to the missing element. Mr. Mendoza-Solorio disagrees.

█ "The Sixth Amendment to the United States Constitution and article I, section 22 (amend. 10) of the Washington Constitution require that a charging document include all essential elements of a crime, statutory and nonstatutory, so as to inform the defendant of the charges against him and to allow him to prepare his defense." *State v. Phillips*, 98 Wn. App. 936, 939, 991 P.2d 1195 (2000) (citing *State v. Hopper*, 118 Wn.2d 151, 155, 822 P.2d 775 (1992); *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991); *State v. Ralph*, 85 Wn. App. 82, 84, 930 P.2d 1235 (1997)). "Therefore an accused has a protected right, under our state and federal charters, to be informed of the criminal charge against him so he will be able to prepare and mount a defense at trial." *McCarty*, 140 Wn.2d at 425 (citing *State v. Bergeron*, 105 Wn.2d 1, 18, 711 P.2d 1000 (1985)).

██ "Every material element of the charge, along with all essential supporting facts, must be put forth with clarity." *McCarty*, 140 Wn.2d at 425 (citing CrR 2.1(a)(1); *Kjorsvik*, 117 Wn.2d at 97). "An information omitting essential elements charges no crime at all." *State v. Sutherland*, 104 Wn. App. 122, 130, 15 P.3d 1051 (2001) (citing *State v. Vangerpen*, 125 Wn.2d 782, 795, 888 P.2d 1177 (1995); *Phillips*, 98 Wn. App. at 939-41; *State v. Hull*,

83 Wn. App. 786, 802, 924 P.2d 375 (1996)).

■ "[W]hen a defendant challenges the sufficiency of a charging document, the standard of review depends on the timing of the objection." *State v. Grant*, 104 Wn. App. 715, 720, 17 P.3d 674 (2001). If the defendant challenges the sufficiency of the charging document while the State still has the opportunity to amend the information, strict construction applies. *Phillips*, 98 Wn. App. at 940-43; *see also Vangerpen*, 125 Wn.2d at 789 (noting State may not amend information after it has rested "unless the amendment is to a lesser degree of the same crime or a lesser included offense"). But if the defendant does not challenge the information until after the State's opportunity to amend the information has been lost, liberal construction applies. *Id.* at 788. This difference in standards discourages "sandbagging," the potential defense practice of remaining silent in the face of a constitutionally defective charging document because a timely challenge will merely result in the State amending the information to cure the defect. *Kjorsvik*, 117 Wn.2d at 103; *Phillips*, 98 Wn. App. at 940; *see also* 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 19.2, at 442 n.36 (1984).

Mr. Mendoza-Solorio challenges the charging document for the first time on appeal; thus, the liberal standard of review applies. *Hopper*, 118 Wn.2d at 155; *Kjorsvik*, 117 Wn.2d at 103. Under the liberal standard, the reviewing court applies a two-prong analysis: "(1) do the necessary elements appear in any form, or by fair construction can they be found, in the information; and if so (2) can the defendant nonetheless show he or she was actually prejudiced by the inartful language." *McCarty*, 140 Wn.2d at 425 (citing *Kjorsvik*, 117 Wn.2d at 105-06). "If the necessary elements are not found or fairly implied, however, we presume prejudice and reverse without reaching the question of prejudice." *McCarty*, 140 Wn.2d at 425 (citing *Kjorsvik*, 117 Wn.2d at 105-06; *City of Auburn v. Brooke*, 119 Wn.2d 623, 636, 836 P.2d 212 (1992)).

■ Here, the State charged Mr. Mendoza-Solorio with

one count of conspiracy to deliver a controlled substance. "[A] document charging conspiracy to deliver a controlled substance must allege that persons involved outside the act of delivery took part in the conspiracy agreement." *McCarty*, 140 Wn.2d at 426 (citing *State v. Valdobinos*, 122 Wn.2d 270, 280, 858 P.2d 199 (1993); *State v. Miller*, 131 Wn.2d 78, 91, 929 P.2d 372 (1997)). Our record indicates both Mr. Atkisson and Mr. Mendoza-Solorio's brother were potentially conspirators. Indeed, Mr. Mendoza-Solorio's brother entered a plea to a conspiracy charge. Even so, the focus of the State's conspiracy here seems to be with Mr. Atkisson.

In *McCarty*, the challenged charging document was substantially identical to the document charging Mr. Mendoza-Solorio; both documents alleged a conspiracy to deliver without mentioning involvement of a third person acting outside the incident of delivery. *McCarty*, 140 Wn.2d at 424. The *McCarty* court, applying the liberal construction standard, held the information deficient reasoning thus:

> Nothing in the conclusory language of the information, however liberally construed, could imply anything more than a simple conspiracy—an agreement between two or more people to commit a crime. RCW 9A.28.040(1). Although the use of the term "conspiracy" implies the involvement of two or more people, in the context of delivery of a controlled substance, it does not imply involvement of a party acting outside the incident of delivery.

*Id.* at 427.

In *McCarty*, the Supreme Court noted that Division Two of the Court of Appeals had partly reasoned the defendant was apprised of the State's theory of the case from the beginning "because of statements made during opening statements, closing arguments, and jury instructions." *McCarty*, 140 Wn.2d at 427. The Supreme Court rejected the Court of Appeals' argument, exclaiming, "[s]urely to ensure due process, the notice of the charge on which a defendant will be tried must logically be given at some point prior to the opening statement of the trial!" *McCarty*, 140

Wn.2d at 427 (citing *Vangerpen*, 125 Wn.2d at 787). The State contends this language allows consideration of extrinsic information available before trial that would inform the defendant of the charges. According to the State, it may enter into this record documents allegedly setting forth adequate facts showing the third person necessary to form the conspiracy. Aside from the problem of asking us to engage in prohibited fact-finding reserved to the trial court, we believe the outcome is nevertheless controlled by *McCarty*.

■ ■ Both the federal and Washington constitutions guarantee the defendant's right to be informed of "the nature and the cause of the accusation." U.S. CONST. amend. 6; CONST. art. I, § 22 (amend. 10). While neither provision specifies *how* the defendant is to be informed, we disagree with the State's interpretation.

The Washington Supreme Court stated more than a century ago:

> The accused, in criminal prosecutions, has a constitutional right to be apprised of the nature and cause of the accusation against him. Const., art. I, § 22. And this can only be made known by setting forth in the indictment or information every fact constituting an element of the offense charged. This doctrine is elementary and of universal application, and is founded on the plainest principle of justice.

*State v. Ackles*, 8 Wash. 462, 464-65, 36 P. 597 (1894).

More than three quarters of a century later, the Supreme Court stated:

> The right of the accused to be apprised by the indictment or information, with reasonable certainty of the nature of the accusation against him to the end that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense, is zealously guarded in all our cases.

*State v. Jeske*, 87 Wn.2d 760, 765, 558 P.2d 162 (1976) (citing *State v. Royse*, 66 Wn.2d 552, 557, 403 P.2d 838 (1965)).

The purpose of article I, section 22 is to prevent "charging documents which prejudice the defendant's ability to mount an adequate defense by failing to provide sufficient notice." *State v. Schaffer*, 120 Wn.2d 616, 620, 845 P.2d 281 (1993) (citing *State v. Leach*, 113 Wn.2d 679, 695-96, 782 P.2d 552 (1989)). The judicially approved means for ensuring constitutionally adequate notice is to require charging documents to set forth the essential elements of the alleged crime. *See State v. Taylor*, 140 Wn.2d 229, 236, 996 P.2d 571 (2000) (discussing constitutional origins of "essential elements rule" governing adequacy of charging documents).

■ ■ *Kjorsvik* and its progeny universally state that, under the first prong of the liberal construction test, the reviewing court must find the essential element on the face of the charging document itself. *See, e.g., Kjorsvik*, 117 Wn.2d at 106; *Hopper*, 118 Wn.2d at 155-56; *Brooke*, 119 Wn.2d at 635; *Valdobinos*, 122 Wn.2d at 285; *State v. Tunney*, 129 Wn.2d 336, 340, 917 P.2d 95 (1996); *McCarty*, 140 Wn.2d at 425. We are unable to locate any Washington authority permitting the reviewing court to import an essential element from an extrinsic source to satisfy the first prong of the *Kjorsvik* test. To the contrary, the first prong of the *Kjorsvik* analysis "requires at least some language in the information giving notice of the missing element." *Tunney*, 129 Wn.2d at 340 (citing *Kjorsvik*, 117 Wn.2d at 106). If extrinsic information were to play a role in the *Kjorsvik* analysis, it would seem applicable to the second prong of the test to determine whether an insufficiently drafted charging document prejudiced the defendant. But, "[a]pplying the first prong of the *Kjorsvik* test, the court looks at the face of the document only." *State v. Franks*, 105 Wn. App. 950, 957, 22 P.3d 269 (2001).

We conclude the information was constitutionally defective because it failed to allege the necessary third party. *McCarty*, 140 Wn.2d at 428. The remedy is to reverse the conspiracy conviction and dismiss the conspiracy charge without prejudice to filing a new information. *Id.* Nevertheless, we grant the State's motion to supplement the record for the limited purpose of facilitating any further review.

## B. Vouching

The issue is whether Deputy Brown prejudiced Mr. Mendoza-Solorio by vouching for the confidential informant.

Mr. Mendoza-Solorio did not object below. "Failure to object to the admissibility of evidence at trial precludes appellate review of that issue unless the alleged error involves manifest error affecting a constitutional right." *State v. Florczak*, 76 Wn. App. 55, 72, 882 P.2d 199 (1994) (citing *State v. Lynn*, 67 Wn. App. 339, 342, 835 P.2d 251 (1992); *State v. Stevens*, 58 Wn. App. 478, 485-86, 794 P.2d 38 (1990)); *see also* RAP 2.5(a)(3). Moreover, Mr. Mendoza-Solorio has not advanced reasoned argument that the challenged testimony constituted a manifest error affecting a constitutional right. RAP 2.5(a)(3); *see also State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992) (reviewing court will not entertain constitutional issues unsupported by reasoned argument).

The State merely argues the challenged testimony did not vouch for the informant's veracity. According to the State, the testimony was nothing more than an innocuous reply to the State's question as to whether the informant had previously withheld cash or drugs from previous controlled buys. The State's contention is unconvincing. Deputy Brown twice volunteered that Mr. Sharpe was a "reliable" informant. RP at 24. Then, in answer to the prosecutor's question regarding Mr. Sharpe's trustworthiness in previous controlled buys, Deputy Brown gave an unequivocal and wide ranging answer: "Mr. Sharpe has been extremely honest and reliable to us. Uh, he's never lied to me as far as I know." RP at 24. Deputy Brown improperly invaded the exclusive province of the jury when he vouched for Mr. Sharpe's veracity before that veracity had been challenged. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Assuming without deciding these facts raise a proper constitutional error, we apply the constitutional

harmless error standard. *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988); *Lynn*, 67 Wn. App. at 345. "An error infringing upon a defendant's constitutional rights is presumed to be prejudicial, and the State has the burden of proving the error was harmless." *State v. Miller*, 131 Wn.2d 78, 90, 929 P.2d 372 (1997) (citing *State v. Caldwell*, 94 Wn.2d 614, 618 P.2d 508 (1980)). "The error cannot be declared harmless unless it was 'harmless beyond a reasonable doubt.'" *Miller*, 131 Wn.2d at 90 (quoting *State v. Stephens*, 93 Wn.2d 186, 191, 607 P.2d 304 (1980); *State v. Aumick*, 126 Wn.2d 422, 894 P.2d 1325 (1995)). Constitutional error is harmless if the State can show the untainted evidence of guilt was so overwhelming as to necessarily lead to a guilty verdict. *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985). The untainted evidence in the record consists of Deputy Brown's unchallenged testimony, and the testimony of Mr. Sharpe and Detective Randall. Mr. Mendoza-Solorio did not call any witnesses.

In total, the State's evidence shows a carefully planned and executed controlled buy operation that ultimately recovered methamphetamine. Mr. Sharpe testified without equivocation as to the joint involvement of Mr. Mendoza-Solorio and Mr. Atkisson in the sale and delivery of the drugs. Mr. Sharpe did not waiver in his testimony during cross-examination. Mr. Mendoza-Solorio was unable to challenge Mr. Sharpe's credibility in any meaningful way. Absent the improper vouching testimony, Mr. Sharpe was still a credible witness. Stated another way, the bolstering testimony of Deputy Brown was insignificant in light of Mr. Sharpe's apparent credibility. Given the untainted evidence in the record, we conclude beyond a reasonable doubt that the error was harmless.

## CONCLUSION

We hold that the conspiracy conviction is reversed without prejudice. We affirm the delivery conviction.

KURTZ, C.J., and KATO, J., concur.