[No. 63697-9-I. Division One. November 29, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN LEROY SIERS, *Appellant*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Brian M. McDonald, Deputy,* for respondent.

¶1 BECKER, J. — After *State v. Powell,*[1] the State must include in the information any aggravating factor it intends to prove for purposes of seeking an exceptional sentence above the standard range. The question in this case is: what remedy is available to a defendant when the State presents an uncharged aggravator to the jury—is it merely to strike the exceptional sentence if one is imposed? Or must the aggravating factor be treated as an essential element of the underlying crime, so that the charge on that count is viewed as fatally deficient for omitting it? We agree with appellant that he is entitled to the usual remedy for a deficient information: dismissal of the underlying criminal charge, without prejudice to the State's ability to refile.

¶2 The uncommon procedural issue presented here arises from that most common of crimes, a bar fight. On the night of June 20, 2008, appellant Brian LeRoy Siers got into an argument with Jesse Hoover at a restaurant and bar in north Seattle for reasons neither could specify at trial. Later, when they were outside smoking, a fight erupted between the two. Another patron, Daniel Whitten, allegedly tried to break up Siers and Hoover, aided by the bartender's girl friend. According to Whitten's testimony at trial, Siers pulled out a small pocket knife. Whitten tried to get the

---

[1] 167 Wn.2d 672, 223 P.3d 493 (2009).

bartender's girl friend out of the way and grabbed Siers from behind. Siers reportedly turned toward Whitten and stabbed him in the abdomen. Hoover testified that he did not see a knife but realized after the fight that he had been stabbed in the arm and forehead. Siers fled the scene. Whitten and Hoover were taken to a hospital for treatment.

¶3 The State charged Siers with two counts of assault in the second degree with a deadly weapon enhancement alleged as to each count. Neither the original nor the amended information alleged the existence of an aggravating circumstance.

■ ¶4 Among the statutory factors a court may consider as a basis for imposing an exceptional sentence outside the standard range is the "Good Samaritan" aggravator. RCW 9.94A.535(3)(w) ("The defendant committed the offense against a victim who was acting as a good samaritan."). The statute codifies a common law aggravating circumstance recognized in *State v. Hillman*, 66 Wn. App. 770, 832 P.2d 1369, *review denied*, 120 Wn.2d 1011 (1992). A recommended pattern instruction defines a "Good Samaritan" as "a person who comes to the aid of an injured, stranded, or otherwise imperiled person." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 300.32, at 745 (3d ed. 2008) (WPIC). This aggravating circumstance is to be presented to the jury during the trial of the alleged crime. 11A WPIC 300.32 note on use at 745.

¶5 The State claims that in early April 2009, it notified Siers in writing of its intention to seek a jury finding on the Good Samaritan aggravating factor with respect to count 2, the alleged assault involving Whitten. On the first day of trial, April 20, 2009, the State also advised the court. Siers testified at trial he acted in self-defense and denied using a knife.

¶6 After both sides rested, the trial court discussed jury instructions with the parties. The proposed instructions reflected the State's intention to seek a finding on the Good Samaritan aggravating factor with respect to count 2. Siers objected to the characterization of Whitten as a Good

Samaritan on insufficiency of the evidence grounds. The court rejected this argument. Siers then raised a second objection: the aggravating factor could not be submitted to the jury because it was not alleged in the information. During the instructions conference, Siers acknowledged receiving notice in advance of trial[2] but argued the State should have amended the information to include the aggravating factor if the State actually intended to put the aggravator before the jury.

¶7 The State took the position that an aggravating circumstance does not have to be included in the information. Nevertheless, the State moved to amend the information. The trial court denied the motion to amend because both sides had already rested. After taking time to research the issue, the trial court agreed tentatively with the prosecution that the aggravator need not be in the information. See *State v. Berrier*, 143 Wn. App. 547, 549, 178 P.3d 1064 (2008), now superseded by *Powell*, 167 Wn.2d 672.

¶8 The court gave three instructions related to the aggravator. Instruction 26 stated, "If you find the defendant guilty of Assault in the Second Degree as charged in Count 2 or the crime of Assault in the Third Degree as a lesser offense of Count 2, then you must determine if the following aggravating circumstance exists: Whether the defendant committed the crime against a victim who was acting as a good Samaritan." Instruction 27 stated, "A good Samaritan is a person who voluntarily comes to one's aid." Instruction 28 explained that it was the State's burden to prove the aggravating circumstance beyond a reasonable doubt and the jury had to unanimously agree on the aggravator.

¶9 Before closing arguments, Siers renewed his objection to the jury instructions and the special verdict form involving the Good Samaritan aggravator:

First of all, it was not alleged in the pleadings that this aggravating circumstance was being urged by the State. I did receive advance notice. There was no question about that.

---

[2] Our record does not include any written notice of the aggravator.

That's what they were intending on doing, but in my judgment they never got around to doing it. They did not amend the information to charge that, and in the absence of a specific allegation in the information I believe that the instruction should not be given.

The trial court overruled the objection and submitted the aggravating factor to the jury. The State concluded its closing argument by urging jurors to remember that "[n]obody asked [Whitten] to jump in and help stop the defendant from a further attack. . . . He did it because he was trying to get the defendant to stop attacking Jesse Hoover. . . . I ask you to hold the defendant accountable for the choices that he made on that night."

¶10 The jury found Siers guilty on both counts of assault in the second degree. By special verdicts, the jury found Siers was armed with a deadly weapon on each count. The jury also answered "yes" on a "Special Verdict Form On Aggravating Circumstance for Count 2 Only":

We, the jury, having found the defendant Brian Siers guilty in Count 2 of the crime of Assault in the Second Degree or the lesser included offense of Assault in the Third Degree, return a special verdict as follows:

Question: Did the defendant Brian Siers commit the crime charged in Count 2 or the lesser included offense in Count 2 against Dan Whitten while Whitten was acting as a good Samaritan?

Answer: Yes.

¶11 At sentencing on June 5, 2009, the State did not request an exceptional sentence.[3] And the trial court did not impose an exceptional sentence. But the court did consider the aggravator in deciding to sentence Siers to 38 months, which was at the high end of the standard range:

I could impose an exceptional sentence because of the good Samaritan aggravator. I think the State's taking the right

_____

[3] At oral argument before this court, counsel for the State said the prosecutor probably introduced the Good Samaritan aggravator as a "backup" in case the jury did not make a deadly weapon finding, to ensure the State would be able to ask for a sentence that would be longer than a standard range sentence.

position in this case in not requesting an exceptional sentence given the facts, but I do think in order to give some weight to the jury's finding of a good Samaritan aggravator that I will impose the high end of the range.

¶12 Siers appeals. He contends aggravating factors are essential elements of the underlying offense and therefore must be included in the information if they are to be submitted to the jury. He argues that since his constitutional right to notice of the Good Samaritan aggravator was violated, he is entitled to reversal of the conviction on count 2.

¶13 All essential elements of a crime, statutory or nonstatutory, must be included in the charging document in order to give the accused notice of the nature of the allegations so that a defense can be properly prepared. *State v. Kjorsvik*, 117 Wn.2d 93, 97-102, 812 P.2d 86 (1991). The essential elements rule is of constitutional origin and is also embodied in a court rule. CONST. art. I, § 22 (amend. 10); U.S. CONST. amend. VI; CrR 2.1(b); *Kjorsvik*, 117 Wn.2d at 102-04; *State v. Grant*, 104 Wn. App. 715, 720, 17 P.3d 674 (2001). When a defendant challenges the sufficiency of the information prior to verdict, the charging document is strictly construed to determine whether all the elements of the crime are included. *State v. Vangerpen*, 125 Wn.2d 782, 788, 888 P.2d 1177 (1995). The remedy for a charging document that omits an essential element is reversal and dismissal of the charges without prejudice, *not* a remand to enter a conviction on a lesser-included offense. *Vangerpen*, 125 Wn.2d at 792-93.

¶14 At the time of Siers' trial, case law supported the trial court's decision to submit the aggravator to the jury, even though it had not been charged in the information. This court held, "[T]here is no statutory or constitutional requirement to plead aggravating factors in the information and, therefore, the State's separate notice of intent to seek an exceptional sentence was sufficient." *Berrier*, 143 Wn. App. at 549. But as both parties recognize, *Powell*—decided in December 2009 after Siers' trial and sentenc-

694

ing—now requires the State to plead aggravating factors in the information as a matter of constitutional law.

¶15 The defendant in *Powell* was charged in 1997 with aggravated first degree murder and, alternatively, with first degree murder. He was found guilty of first degree murder. The conviction was reversed. In 2002, Powell was tried again for the crime and convicted of first degree murder. The information charging Powell for that trial did not give notice of aggravating factors, but Powell received an exceptional sentence based on facts found by the trial court rather than the jury. This sentence was reversed and remanded in 2006 by the Court of Appeals based on *Blakely v. Washington*, 542 U.S. 296, 300-01, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).[4] On remand for resentencing, the State sought to impanel a jury to decide whether the aggravating factors existed, using the procedure authorized by a newly enacted statute, RCW 9.94A.537. *Powell*, 167 Wn.2d at 677. Over Powell's objection, the trial court concluded it had authority to proceed as the State requested. The Supreme Court granted Powell's motion for discretionary review on this issue.

¶16 Powell argued the trial court lacked authority to impanel a jury to consider aggravating factors, in part because the information charging him in 2002 with first degree murder did not allege any aggravating factors. Relying on *Kjorsvik*, he challenged the sufficiency of the charging document and argued that "the lack of pretrial notice in the information of the alleged aggravating circumstances denied him his constitutional right to know the nature and cause of the accusation against him." *Powell*, 167 Wn.2d at 681.

¶17 A four justice plurality (Chief Justice Alexander, and Justices Madsen, Fairhurst, and J.M. Johnson) disagreed with Powell on this point. They concluded that while constitutional due process requires the State to give some

---

[4] *Powell*, 167 Wn.2d at 677 (citing Order Granting Petition in Part, *In re Pers. Restraint of Powell*, No. 34244-8-II (Wash. Ct. App. June 20, 2006)).

form of pretrial notice to a defendant concerning the aggravating circumstances the State will attempt to prove, aggravating circumstances *are not essential elements* of the underlying offense and therefore need not be included in the information under *Kjorsvik*. *Powell*, 167 Wn.2d at 681-88. The four justice plurality affirmed the trial court's decision to impanel a jury to consider the aggravating circumstances.

 ¶18 A three justice dissent (Justices Owens, Sanders, and Chambers) concluded the trial court lacked authority to impanel a jury to consider the aggravating circumstances and would have reversed, relying on *Kjorsvik*, 117 Wn.2d at 97; *Apprendi v. New Jersey*, 530 U.S. 466, 494, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely*, 542 U.S. at 303; and *State v. Recuenco*, 163 Wn.2d 428, 434, 180 P.3d 1276 (2008). In their view, aggravating circumstances *are essential elements of a crime* because they are facts exposing the defendant to potential punishment above a statutory maximum. Accordingly, they must be "charged in an information, submitted to a jury, and proved beyond a reasonable doubt." *Powell*, 167 Wn.2d at 695 (Owens, J., dissenting). Because the State did not provide Powell with any specific notice of aggravating circumstances before his trial in 2002, let alone allege them in the information, the dissent concluded it would be a violation of the constitutional provisions identified in *Kjorsvik* to allow enhancement of his sentence with such aggravators.

¶19 A two justice concurrence (Justices Stephens and C. Johnson) agreed with the plurality that affirmance was the proper result, but only because of the posture of the case as a resentencing under *Blakely*. For post-*Blakely* cases, these two justices agreed with the dissenters that aggravating factors have to be included in the information:

> The lead opinion's opinion that aggravating factors are not strictly elements and thus need not be included in the information misses the motivating premise behind the jury trial right. *See Blakely*, 542 U.S. at 306 (noting that the jury right does not turn on the legislative decision to label aggravating

factors as "elements" or "sentencing factors"). And since the requirement that aggravating factors be charged in the information inheres in the Sixth Amendment jury trial right (not Fifth Amendment due process as discussed by the lead opinion), it applies to the states and binds us in this case. I therefore agree with the dissent and would hold that the State must charge aggravating factors in the information and prove them to a jury in order to obtain an enhanced sentence. For post-*Blakely* cases, this is the rule.

*Powell*, 167 Wn.2d at 689-90 (Stephens, J., concurring).

¶20 As the State recognizes, the two justice concurrence in *Powell* combined with the three justice dissent yields a majority holding affecting the procedure in post-*Blakely* cases: notice of aggravating factors must be given in the charging document. *Powell*, 167 Wn.2d at 690 (Stephens, J., concurring), 695 (Owens, J., dissenting); *see also State v. Zakel*, 61 Wn. App. 805, 808, 812 P.2d 512 ("Where there is no majority agreement as to the rationale for a decision, the holding of the court is the position taken by those concurring on the narrowest grounds." (citing *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977))), *aff'd*, 119 Wn.2d 563, 834 P.2d 1046 (1992). Siers' case is post-*Blakely*. The State could have easily amended the information to allege the Good Samaritan aggravating factor but chose not to do so. This, as the State concedes on appeal, was error under *Powell*.

¶21 However, *Powell* does not answer the question of what remedy is required in a post-*Blakely* case where the State obtains a jury finding of the existence of an uncharged aggravating circumstance. Ordinarily, when the information alleges a crime but leaves out an essential element, the remedy is reversal of any resulting conviction and dismissal without prejudice to the State's right to recharge. *Vangerpen*, 125 Wn.2d at 791. Siers takes the position that the good Samaritan aggravating factor was an essential element of the second degree assault charge involving Whitten. Therefore, he contends the amended information charging count 2 was constitutionally deficient

and he is entitled to reversal of that conviction. The State argues the proper remedy where the jury is presented with an uncharged aggravator is not to reverse the underlying conviction, but rather to vacate any exceptional sentence that was imposed and remand for resentencing. Because no exceptional sentence was imposed here, the State argues, Siers is left with no remedy.

¶22 Relevant to the question of remedy is the development of the law regarding sentence enhancements for crimes committed while armed with a firearm or deadly weapon. Statutory authorization for such enhancements predates the Sentencing Reform Act of 1981, chapter 9.94A RCW. For many years, Washington has had a statute requiring a mandatory five year term for a person convicted of committing a crime while armed with a firearm. In 1972 the Supreme Court heard the case of a defendant who was convicted of second degree assault, with a special verdict finding that she committed the crime while armed with a deadly weapon. She was sentenced under RCW 9.41.025 to a mandatory five year term for being armed with a firearm. *State v. Frazier*, 81 Wn.2d 628, 629, 503 P.2d 1073 (1972). Her appeal challenged the constitutionality of RCW 9.41.025 as having created a separate crime without properly amending the assault statute. The court determined that the statute did not define a separate crime; rather, it created a separate penalty. *Frazier*, 81 Wn.2d at 632.

¶23 The appellant in *Frazier* also argued the procedure used to apply the statute was unconstitutional because the information failed to charge that she was subject to the added penalty and further failed to allege the specific acts bringing her within the statute. The court agreed this was a violation of procedural due process. "Where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue of whether that factor is present, must be presented to the jury upon proper allegations and a verdict thereon rendered before the court can impose the harsher penalty." *Frazier*, 81

Wn.2d at 633. The rule of *Frazier* requiring firearm and deadly weapon enhancements to be charged in the information has been consistently applied in later cases, including *In re Personal Restraint of Bush*, 95 Wn.2d 551, 554, 627 P.2d 953 (1981), and *State v. Theroff*, 95 Wn.2d 385, 393, 622 P.2d 1240 (1980).

¶24 The plurality in *Powell* declined to extend the charging requirement in *Bush* and *Frazier* to aggravating circumstances considered under the Sentencing Reform Act. *Powell*, 167 Wn.2d at 685. But the ad hoc majority of five did do so when they held aggravating circumstances must be charged in the information.

¶25 The State now relies on *Frazier* for the proposition that where the State fails to allege a sentencing enhancement in the information, the remedy is to remand the case for resentencing without the enhancement if one was imposed, not to reverse the underlying conviction that was enhanced. *See Frazier*, 81 Wn.2d at 635 ("The conviction for assault in the second degree is affirmed and the case is remanded to the trial court for resentencing.").

¶26 Because here the trial court ultimately decided not to give Siers an exceptional sentence, the State's analysis would mean there would be no remedy for Siers. The court accepted the State's decision not to seek an exceptional sentence and imposed a standard range sentence, so the sentence by itself is not appealable. RCW 9.94A.585(1) (sentence within the standard sentence range shall not be appealed). Siers' conviction and sentence on count 2 would simply be affirmed in this appeal, even though the jury's special verdict finding the existence of the aggravator clearly weighed against him in the court's decision to impose a sentence at the high end of the standard range.

¶27 We are not persuaded by the State's contention that the result in *Frazier* dictates the result in this case. First, *Frazier* was pre-*Blakely*. Second, there is no indication in *Frazier* or its progeny that the court considered or was asked to consider the issue Siers raises here—whether omitting the enhancement from the information vitiates

the underlying offense as well as the enhanced sentence. Resentencing was the remedy requested by the appellant. *Frazier*, 81 Wn.2d at 629 ("Appellant also urges she was improperly sentenced inasmuch as RCW 9.41.025 is unconstitutional."). The court simply gave appellant the remedy she asked for. Consequently, the result in *Frazier* is a result, not a precedential holding.[5]

¶28 Again, we return to the three justice dissent and two justice concurrence in *Powell*. For the three dissenters, aggravating circumstances are unequivocally "essential elements of the crime." *Powell*, 167 Wn.2d at 694 (Owens, J., dissenting). The two concurring justices did not go that far but did emphasize that aggravating factors are "functionally" equivalent to elements of the crime under *Blakely* and *Apprendi*. *Powell*, 167 Wn.2d at 689 (Stephens, J., concurring). The two justice concurrence held, "[T]he State must charge aggravating factors in the information and prove them to a jury in order to obtain an enhanced sentence." *Powell*, 167 Wn.2d at 690 (Stephens, J., concurring). The two justices joined in affirming the decision below only because in the particular circumstances of a resentencing under *Blakely*, the State "cannot go back in time to amend the original information, and amending it now would require retrial on the underlying offense, which was already proved to the jury and admits of no constitutional defect. The Constitution does not require the impossible." *Powell*, 167 Wn.2d at 690 (Stephens, J., concurring).

¶29 Here too, the underlying offense—the second degree assault involving Whitten—has already been proved to a jury, as it was in *Frazier*, where the conviction on the underlying offense survived. But post-*Blakely*, it is a new question whether the conviction on the underlying offense

---

[5] An appellate court opinion that does not discuss a legal theory does not control a future case in which counsel properly raises that legal theory. *State v. Reinhart*, 77 Wn. App. 454, 458-59, 891 P.2d 735 (citing *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 824-25, 881 P.2d 986 (1994)), *review denied*, 127 Wn.2d 1014 (1995); *see also State ex rel. Gallwey v. Grimm*, 146 Wn.2d 445, 459, 48 P.3d 274 (2002) (court is "not constrained to follow a decision where the opinion's holding controls an issue, but the issue was not raised in the case").

survives if the charging document omits aggravators that the State presented to the jury. Powell's conviction on the underlying offense was not constitutionally defective because it was pre-*Blakely*. Given the heavy reliance on *Blakely* and the jury trial right in the *Powell* concurrence, we do not interpret the concurrence as continuing to require the preservation of the underlying conviction when the defendant had to defend at trial against an uncharged factor that was the "functional equivalent" of an element. According to the concurring justices, it misses "the motivating premise behind the jury trial right" to conclude that aggravating factors are not strictly elements and thus need not be included in the information. *Powell*, 167 Wn.2d at 689 (Stephens, J., concurring). Aggravating circumstances, whether or not labeled by the legislature as elements, must be part of the formal charge; a charge omitting any particular fact which the law makes essential to the punishment is no accusation at all. *Powell*, 167 Wn.2d at 689-90 (Stephens, J., concurring) (citing *Blakely*, 542 U.S. at 301-02 and authorities cited therein). According to the concurrence, the issue raised by Powell's appeal cannot be limited to procedural due process under the Fifth Amendment; the requirement that aggravating factors be charged in the information "inheres in the Sixth Amendment jury trial right" and thus "applies to the states and binds us in this case." *Powell*, 167 Wn.2d at 690 (Stephens, J., concurring).

¶30 The State would have us hold that aggravating circumstances submitted to a jury under the Sentencing Reform Act do not adhere to and expand the elements of the underlying crime for purposes of analyzing the information. But this would mean the remedy available for a deficient information turns on whether the legislature has classified a particular fact as an element or a sentencing factor. This is inconsistent with the direction *Blakely* and *Powell* have taken. *See Powell*, 167 Wn.2d at 689-90 (Stephens, J., concurring) ("[T]he jury trial right does not turn on the legislative decision to label aggravating factors as 'elements' or 'sentencing factors'." (citing *Blakely*, 542 U.S. at 306)).

¶31 Conversely, to hold aggravating circumstances *are* the functional equivalent of essential elements in charging, just as they are in proof to a jury, is consistent with the Supreme Court's decision in *State v. McCarty*, 140 Wn.2d 420, 426, 428, 998 P.2d 296 (2000). In *McCarty*, the issue before the court was whether the information charging the defendant with conspiracy to deliver methamphetamine was fatally defective because it omitted a necessary element of the crime, an allegation that a third person was involved outside the agreement to deliver drugs. *McCarty*, 140 Wn.2d at 424. The court held the information was constitutionally insufficient, citing *Kjorsvik* and *Vangerpen*, among other authority. *McCarty*, 140 Wn.2d at 425. The dissent took the position that there is a crucial difference between jury instructions, which must be " 'exactingly precise,' " and charging documents, in which a simple allegation that necessarily implies facts is enough. *McCarty*, 140 Wn.2d at 426 n.1 (quoting dissent at 430-31). The majority disagreed. "[S]ince both charging documents and jury instructions must identify the essential elements of the crime for which the defendant is charged (information) and tried (jury instructions), the dissent's distinction is without a difference." *McCarty*, 140 Wn.2d at 426 n.1. Because the information, liberally construed under *Kjorsvik*, failed to set forth an essential element, the court dismissed McCarty's conviction without prejudice to subsequent prosecution. *McCarty*, 140 Wn.2d at 428.

¶32 Here, attempting to avoid the *Vangerpen*-mandated remedy of dismissal without prejudice, the State contends the error committed in Siers' case "is not in the charging language for second degree assault, but the failure to provide proper notice of the aggravating circumstance."[6] After *Powell*, this too is a distinction without a difference. The due process idea that the State only has to "provide proper notice" was the preferred rationale of a minority of the court in *Powell*. Five justices agreed that notice, to be

---

[6] Br. of Resp't at 12.

constitutionally sufficient under *Blakely*'s interpretation of the jury trial right, must be given in the formal charging document.

¶33 To be sure, the legislature has not codified the crime of "second degree assault against a good Samaritan." But Siers was prosecuted for the functional equivalent of that crime when the State brought that crime before the jury, the trial court instructed the jury on that crime, and the jury found Siers guilty of that crime. The fact that the trial judge weighed the jury's finding during sentencing is not necessary to our rationale. Under *Kjorsvik*, a defendant need not show prejudice to obtain dismissal when a necessary element is omitted from the information altogether. *Kjorsvik*, 117 Wn.2d at 105-06; *McCarty*, 140 Wn.2d at 425, 428. But the judge's decision to sentence Siers at the high end of the standard range to give weight to the jury's finding on the aggravator illustrates that prejudice is not merely a hypothetical possibility. The key point under *Blakely* and *Apprendi* is that Siers was exposed to the possibility the judge would exercise the authority given by the jury's verdict to impose a greater punishment than the information contemplated.

¶34 Functionally, the Good Samaritan aggravator operated as an essential element of an aggravated version of assault, which the State had the burden of proving beyond a reasonable doubt and Siers had to defend against. The State asks us to disregard the aggravating element of the charge the State prosecuted at trial and to leave standing the conviction for the underlying offense of second degree assault. This is the very result the Supreme Court rejected in *Vangerpen*.

¶35 Our Supreme Court has not held that aggravating circumstances are *for all purposes* essential elements of a substantive crime, and neither do we. Following *Powell*, however, we do conclude the State's failure to plead the Good Samaritan aggravator in the information functionally undermined the jury's verdict on the substantive crime of second degree assault in the same way the State's failure to

allege third person involvement in *McCarty* undermined the jury's verdict on the substantive crime of conspiracy. Thus, we reverse Siers' conviction for the aggravated second degree assault involving Whitten, the Good Samaritan, without prejudice to the State's right to refile. *See Vangerpen*, 125 Wn.2d at 793 (noting, "of course the State need not refile charges and may, if it wishes, charge only attempted murder in the second degree").

¶36 Siers also contends the trial court violated the prohibition against double jeopardy by imposing deadly weapon enhancements on his convictions for second degree assault, an offense already predicated on the use of a deadly weapon. The Washington Supreme Court rejected this argument in *State v. Kelley*, 168 Wn.2d 72, 226 P.3d 773 (2010), and in *State v. Aguirre*, 168 Wn.2d 350, 229 P.3d 669 (2010). Following *Kelley* and *Aguirre*, we conclude the trial court did not err by imposing deadly weapon enhancements on Siers' assault convictions.

¶37 The second degree assault conviction on count 2 involving the Good Samaritan aggravator is reversed and dismissed without prejudice to the State's right to recharge that count if it so chooses.

Cox, J., concurs.

¶38 Dwyer, C.J. (dissenting) — The majority opinion finds error where none exists, ignores the absence of prejudice to the defendant stemming from the perceived error, and bestows a total windfall as a remedy: ordering dismissal of a charge against Brian Siers, a man who was constitutionally convicted of assault in the second degree and constitutionally sentenced therefor. I dissent.

I

¶39 The relevant facts are easily stated:

1. Siers was charged by information with two counts of assault in the second degree. All necessary elements of those offenses were included in the information.

2. At trial, the jury was asked whether, based on the evidence, the State had also proved beyond a reasonable doubt that the "good samaritan" aggravator, RCW 9.94A.535(3)(w), had been established as to the second count of assault. The jury answered in the affirmative.

3. Siers was convicted on both counts.

4. At sentencing, the State did not request the imposition of an exceptional sentence.

5. The trial court did not impose an exceptional sentence.

6. The trial court referenced the jury's finding on the "good samaritan" aggravator in explaining its decision to impose a sentence of incarceration for the second count of assault at the high end of the applicable standard range.

## II

¶40 The majority holds that because the jury was asked to answer whether the "good samaritan" aggravator had been proved, that aggravator became an element of the offense of assault in the second degree. Going further, the majority holds that because that element was not set forth in the information, reversible error exists. Going even further, the majority holds that this error necessitates a remedy and that the only appropriate remedy is dismissal of the charge.

¶41 The majority is wrong on all counts.

¶42 Siers urges us to focus on the actions of the jury—rather than the trial judge—in analyzing his claim of error. Because the jury made a factual finding, he argues, the fact found must be an element of the crime he was alleged to have committed. The majority hears Siers' entreaty as a siren's song; I hear it as the clanging of warning bells.

¶43 By accepting Siers' construction of the question presented, the majority loses sight of the true issue. Here,

the trial judge imposed a sentence that was authorized by the jury's findings and the information filed. Nothing more was required. There was no error.

## III

¶44 Controlling precedent of the United States Supreme Court does not support the majority's holding.

> Whether chosen by the judge or the legislature, the facts guiding judicial discretion below the statutory maximum need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt.

*Harris v. United States*, 536 U.S. 545, 565, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002).

¶45 In fact,

> [t]he judge may select any sentence within the range, based on facts not alleged in the indictment or proved to the jury . . . even if they persuade the judge to choose a much higher sentence than he or she otherwise would have imposed. That a fact affects the defendant's sentence, even dramatically so, does not by itself make it an element.

*Harris*, 536 U.S. at 566. Indeed, judges "have always considered uncharged 'aggravating circumstances' that, while increasing the defendant's punishment, have not 'swell[ed] the penalty above what the law has provided for the acts charged.' " *Harris*, 536 U.S. at 562 (alteration in original) (quoting 1 JOEL PRENTISS BISHOP, COMMENTARIES ON THE LAW OF CRIMINAL PROCEDURE § 85, at 54 (2d ed. 1872)).

¶46 The Supreme Court's decision in *Harris* makes it clear that the "good samaritan" aggravator was not an element of the crime Siers was convicted of committing. This is so because a standard range sentence—a punishment authorized by the jury's findings, even in the absence of a finding on the aggravator—was imposed. Because the aggravator was not an element, it did not need to be set forth in the information.

¶47 There was no error.

IV

¶48 The majority wrongly claims that our Supreme Court's decision in *State v. Powell*, 167 Wn.2d 672, 223 P.3d 493 (2009), compels the result it reaches. This is not so.

¶49 To dispute the majority's assertion, I will quote exactly the same portion of Justice Stephens' concurring opinion that is quoted in the majority opinion.

> The lead opinion's opinion that aggravating factors are not strictly elements and thus need not be included in the information misses the motivating premise behind the jury trial right. *See Blakely* [*v. Washington*], 542 U.S. [296,] 306[, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)] (noting that the jury trial right does not turn on the legislative decision to label aggravating factors as "elements" or "sentencing factors"). And since the requirement that aggravating factors be charged in the information inheres in the Sixth Amendment jury trial right (not Fifth Amendment due process as discussed by the lead opinion), it applies to the states and binds us in this case. I therefore agree with the dissent and would hold that the State must charge aggravating factors in the information and prove them to a jury in order to obtain an enhanced sentence. For post-*Blakely* cases, this is the rule.

*Powell*, 167 Wn.2d at 689-90 (Stephens, J., concurring).

¶50 The majority quotes this passage but does not give meaning to it. The quoted passage provides that "the State must charge aggravating factors in the information and prove them to a jury *in order to obtain an enhanced sentence.*" *Powell*, 167 Wn.2d at 690 (Stephens, J., concurring) (emphasis added). The majority ignores the italicized portion of this quotation. No enhanced sentence was sought or obtained in Siers' prosecution. Thus, the trial judge herein did nothing at odds with the *Powell* decision. There was no error.

¶51 The majority's citation to *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972), does not alter this analysis. Again, quoting the exact language quoted in the majority opinion, *Frazier* provides,

Where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue of whether that factor is present, must be presented to the jury upon proper allegations and a verdict thereon rendered *before the court can impose the harsher penalty*.

*Frazier*, 81 Wn.2d at 633 (emphasis added).

¶52 Again, the majority ignores the italicized language. Here, the court did *not* impose a "harsher penalty." The information filed was sufficient to support the conviction gained and the standard range sentence imposed.

## V

¶53 The majority opinion finds error where none exists, ignores the absence of prejudice to the defendant arising from the procedures employed, and bestows a windfall— dismissal of a charge of assault in the second degree—to an undeserving defendant.

¶54 The information, as filed, supported the convictions entered. The sentences imposed were authorized by the jury's findings. Nothing went wrong here.

¶55 I dissent.

Review granted at 171 Wn.2d 1009 (2011).