IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISON ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　Respondent,<br><br>　　　v.<br><br>MARIAH JOLEENE BOUDRIEAU,<br><br>　　　　　　　　Appellant. | No. 81762-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Mariah Boudrieau and two other people were involved in a planned robbery that ended with the victim shot and paralyzed. She appeals her convictions of robbery in the first degree and assault in the first degree contending that the State failed to prove that she, personally, satisfied each of the elements of the crimes. The jury instructions allowed the State to prove and the jury to convict Boudrieau as an accomplice. We also reject her contention that the information charging robbery in the first degree was deficient. While we affirm her convictions, we remand for resentencing to correct her offender score under State v. Blake[1], to correct the judgment and sentence by noting that the same criminal conduct supported both convictions, and to strike her community custody supervision fees.

---

[1] In State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021), our Supreme Court held Washington's simple drug possession statute (RCW 69.50.4013) is unconstitutional.

Citations and pin cites are based on the Westlaw online version of the cited material

FACTS

Mariah Boudrieau asked her friend, Dennis Peltier, for help with a "lick," which Peltier understood to mean that she wanted his help in "some sort of plan to get drugs." Peltier eventually agreed to go along with her plan. Boudrieau texted Peltier, "What's your address? Strap's on the way, so we can do this lick." Peltier testified at trial that he understood "Strap" as a nickname for a person, and that the term "strapped" usually means someone has a gun.

Peltier understood the plan was for Boudrieau to lure Darrick Caudill to Peltier's house under the pretense of selling heroin to Peltier. Peltier did not actually have any money to buy heroin at that time, and Peltier knew Boudrieau also did not have money to pay for the heroin. Peltier testified that he did not know "Strap" would have a gun, but he did know he would be the "muscle," and that he and Boudrieau were somehow "just going to take it" from Caudill. Boudrieau referred to Caudill as a "Jake," meaning he was an easy target. When Boudrieau got to Peltier's house, she called Caudill and said Peltier wanted an ounce of heroin. Caudill expected a $1,200 payment.

When Caudill entered the house, he pulled out the heroin and put it on a scale. Peltier asked if he could sample it. When Peltier went to sample a piece of the heroin, Caudill asked if he could see the money first. Peltier proceeded into the kitchen and started going through the cupboards, pretending to look for the money. Boudrieau remained seated on the couch.

Caudill noticed someone entering the house gun-first through the door. Caudill initially froze, but he then threw his body into the back of the door

2

smashing the gunman's arm in between the door and the door jamb. Boudrieau then got up off the couch and came at Caudill "with her hands out like claws," grabbing him. Boudrieau did not seem surprised to see a third person there. As Boudrieau and Caudill grappled for about 10 to 15 seconds, the gunman shot Caudill in the back. The gunman's head was covered by a bandana and t-shirt wrapped around it.

After Caudill was shot and lying on the ground, Boudrieau started going through his pockets, taking his money and phone. Caudill asked Boudrieau to call an ambulance because he thought he was dying, but Caudill testified that Boudrieau responded, "I don't give a fuck," and continued to rob him. Peltier heard Boudrieau ask Caudill where the rest of the drugs were. Boudrieau gave Peltier a piece of the heroin on her way out the door. When the gunman declared he was leaving, Boudrieau responded that she was going with him. Caudill then testified that either the gunman or Boudrieau picked up the heroin and left. Caudill could not move his legs or stand up because he was paralyzed from the chest down.

The State charged Boudrieau with assault in the first degree and robbery in the first degree under the theory of accomplice liability. A jury convicted her on both counts. Additional facts are provided where relevant below.

DISCUSSION

Sufficiency of the Evidence

Boudrieau first contends that the evidence was insufficient to support the convictions because the State was required to prove that she personally satisfied

all the elements of the crimes based on the to-convict jury instructions. We disagree.

"A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." State v. O'Neal, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). We will reverse a conviction "only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt." State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005). Further, "[a] reviewing court will reverse a conviction for insufficient evidence only if no rational trier of fact could find that the State met its burden." State v. Teal, 152 Wn.2d 333, 337, 96 P.3d 974 (2004).

Central to Boudrieau's argument are the to-convict instructions for both counts. The court instructed the jury that to convict Boudrieau of assault in the first degree, each of the following elements must be proved beyond a reasonable doubt:

> (1) That on or about the [sic] February 6th, 2019, the *Defendant, or Co-Defendant*, assaulted Darrick Caudill;
>
> (2) That the assault was committed with a firearm;
>
> (3) That the *Defendant* acted with intent to inflict great bodily harm; and
>
> (4) That this act occurred in the State of Washington.

(Emphasis added.) Although other people were involved in the crimes, Boudrieau was tried alone. There was no co-defendant at trial.

Further, the court instructed the jury that to convict Boudrieau of robbery in the first degree, each of the following elements must be proved beyond a reasonable doubt:

(1) That on or about the [sic] February 6th, 2019, the defendant, unlawfully took personal property from the person or in the presence of another;

(2) That the defendant intended to commit theft of the property;

(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to that person;

(4) That the force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking;

(5) That in the commission of these acts or in the immediate flight therefrom *the defendant* inflicted bodily injury; and

(6) That any of these acts occurred in the State of Washington.

(Emphasis added.)

Boudrieau argues that including "Co-Defendant" in only one element of the to-convict instruction for assault left the State with the burden to prove that Boudrieau, through her own conduct, personally acted with intent to inflict great bodily harm under the assault charge, and that Boudrieau personally inflicted bodily injury under the robbery charge. Thus, because the State did not prove Boudrieau personally intended to inflict great bodily harm or caused bodily injury, her convictions must be reversed. We disagree.

To support her argument, Boudrieau relies on the "law of the case" doctrine but ignores Teal. 152 Wn.2d at 339. Washington's "law of the case" doctrine requires the State to prove every element in the to-convict instruction beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 762, 399 P.3d 507 (2017). Our Supreme Court in Teal discussed to-convict instructions in the context of accomplice liability.

5

In Teal, the defendant argued that the State did not prove the elements of robbery because the to-convict instruction referred only to "acts of the 'defendant' and not to the acts of the 'defendant or an accomplice,'" and the State did not provide evidence that the defendant was the principal in the robbery. 152 Wn.2d at 336. Our Supreme Court distinguished "law of the case" circumstances where the to-convict instruction actually *added* an element to the charge. Id. at 337-38 (discussing the added venue element in State v. Hickman, 135 Wn.2d 97, 954 P.2d 900 (1998)). It explained that accomplice liability is not an element of the crime charged. Id. at 338. It further stated that the rule requiring that all elements of a crime be listed in a single instruction is not violated when accomplice liability is described in a separate instruction. Id. at 339. That court held that a to-convict instruction omitting the phrase "defendant or an accomplice" was sufficient when read in conjunction with an accomplice liability instruction. Id.

Jury instructions are sufficient when, read as a whole, they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005); Teal, 152 Wn.2d at 339.

In the instant case, the trial court also instructed the jury on accomplice liability for both charges. Instruction 11 stated:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when she is an accomplice of such other person in the commission of the crime.

6

A person is an accomplice in the commission of assault, if, with knowledge that it will promote or facilitate the commission of the crime, she either:

(1)  solicits, commands, encourages, or requests another person to commit the crime; or

(2)  aids or agrees to aid another person in planning or committing the crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence.  A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime.  However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

Instruction 21 similarly instructed on accomplice liability, but for the crime of robbery.

The to-convict instruction for assault in the first degree may have mistakenly referred to a "Co-Defendant" when it was obvious to everyone the trial involved a single defendant.  However, read as a whole, the instructions still permitted the jury to consider whether the defendant was guilty as a principal or an accomplice as the jury did in Teal.  Moreover, the instructions accurately stated the law, did not mislead the jury, and permitted each party to argue its theory of the case.  Additionally, the jurors were instructed to consider all of the instructions: "The order of these instructions has no significance as to their relative importance.  They are all important."

Boudrieau does not otherwise maintain that the evidence was insufficient beyond her arguments that she did not personally act with intent to inflict great bodily harm, and that she did not personally inflict bodily injury.  A rational trier of

7

fact could find that the State met its burden proving Boudrieau guilty of assault in the first degree and robbery in the first degree as an accomplice.

### Split Elements

Boudrieau next contends that the State failed to prove she was guilty of robbery in the first degree as an accomplice because it did not prove another person's conduct satisfied all elements of the offense, which is required under RCW 9A.08.020. We disagree.

Our Supreme Court and this court have held that juries can split elements between multiple participants, or accomplices, in criminal cases. State v. Dreewes, 192 Wn.2d 812, 824, 432 P.3d 795 (2019) (holding that, in an assault in the second degree case, all the State needed to prove for accomplice liability to attach is that a co-participant assaulted the victim with a deadly weapon and that Dreewes solicited and aided in the assault); State v. Walker, 182 Wn.2d 463, 484, 341 P.3d 976 (2015) (holding that Walker's conviction for premeditated murder could be based on a finding that he or an accomplice acted with premeditated intent to cause the victim's death); State v. Hoffman, 116 Wn.2d 51, 105, 804 P.2d 577 (1991) (concluding the jury did not need to decide who actually shot and killed a police officer so long as both participated in the crime); State v. Haack, 88 Wn. App. 423, 427, 958 P.2d 1001 (1997) (recognizing that a jury may convict a defendant of the crime of assault in the first degree based on splitting the elements between the defendant and another under accomplice liability).

Boudrieau invites us to disregard this line of cases because their holdings trace back to State v. Carothers, 84 Wn.2d 256, 525 P.2d 731 (1974), which was decided under the former accomplice liability statute, former RCW 9.01.030 (1974).[2] See Dreewes, 192 Wn.2d at 824 (quoting Walker, 182 Wn.2d at 483 (citing Haack, 88 Wn. App. at 429); Hoffman, 116 Wn.2d at 104 (citing Carothers, 84 Wn.2d at 264)). Boudrieau contends former RCW 9.01.030 (1974) reached "[e]very person concerned in the commission of a felony," whereas the current accomplice liability statute, RCW 9A.08.020(1), provides liability "only for 'the conduct of another person.'" Boudrieau contends the plain text and legislative history of RCW 9A.08.020[3] make clear that a person may be liable as an accomplice only if another person committed the offense.

---

[2] Former RCW 9.01.030 (1974) provided:

Every person concerned in the commission of a felony, gross misdemeanor, or misdemeanor, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who directly or indirectly counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor, or misdemeanor, is a principal, and shall be proceeded against and punished as such. The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain criminal intent, shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing, or procuring him.

[3] The current statute provides in relevant part, that "[a] person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable," and that "[a] person is legally accountable for the conduct of another person when . . . [h]e or she is an accomplice of such other person in the commission of a crime." RCW 9A.08.020(1),(2)(c). The statute then explains that

"[a] person is an accomplice of another person in the commission of a crime if:

We reject Boudrieau's invitation to conduct a statutory construction analysis. Hoffman, Walker, and Dreewes have already applied the current accomplice liability statute, RCW 9A.08.020. Decisions of the Supreme Court are binding on lower courts. State v. Brown, 13 Wn. App. 2d 288, 291, 466 P.3d 244 (2020). The fact that our Supreme Court continues to apply the same principles from older cases indicates that those principles are still applicable under the current statute.

"'Accomplice liability represents a legislative decision that one who participates in a crime is guilty as a principal, regardless of the degree of the participation.'" Dreewes, 192 Wn.2d at 824 (quoting Hoffman, 116 Wn.2d at 104). We presume the legislature is "'familiar with judicial interpretations of statutes and, absent an indication it intended to overrule a particular interpretation, amendments are presumed to be consistent with previous judicial decisions.'" State v. Ervin, 169 Wn.2d 815, 825, 239 P.3d 354 (2010) (quoting State v. Bobic, 140 Wn.2d 250, 264, 996 P.2d 610 (2000)).

In the instant case, Boudrieau contends she cannot be liable as an accomplice to robbery because the State failed to prove the gunman took property from or in the presence of Caudill. Under RCW 9A.08.020 and the

---

(a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
(i) Solicits, commands, encourages, or requests such other person to commit it; or
(ii) Aids or agrees to aid such other person in planning or committing it."
RCW 9A.08.020(3).

10

authority set out in Hoffman, Walker, and Dreewes, the State needed only to prove a co-participant shot Caudill and that Boudrieau solicited and aided in the robbery. "[T]he accomplice liability statute predicates criminal liability on general knowledge of the crime and not on specific knowledge of the elements of the participant's crime." Dreewes, 192 Wn.2d at 824 (alteration in original) (quoting Hoffman, 116 Wn.2d at 104). The jury could have found that Boudrieau planned to rob Caudill with the help of the gunman. When Caudill tried to stop the gunman from entering, Boudrieau jumped to the gunman's aid by attacking Caudill. This allowed the gunman to shoot Caudill, rendering him helpless and allowing Boudrieau to take Caudill's money, phone and heroin. The State was not required to prove the gunman took the heroin in order for the jury to convict Boudrieau of robbery in the first degree.

Information

Boudrieau next contends, for the first time on appeal, that the information failed to contain all the essential elements for the crime of robbery in the first degree. We disagree.

Boudrieau has a constitutional right to be informed of each criminal charge alleged so that she is able to adequately prepare and mount a defense for trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (amend. 10). The State must provide an information that sets forth every material element of each charge made, along with essential supporting facts. State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). An essential element is "one whose specification is necessary to establish the very illegality of the behavior" charged. State v.

Johnson, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992). The information does not need to include definitions of elements. State v. Johnson, 180 Wn.2d 295, 302, 325 P.3d 135 (2014).

When a defendant challenges the sufficiency of the charging document prior to a verdict, the charging language must be strictly construed. State v. Taylor, 140 Wn.2d 237, 237, 996 P.2d 571 (2000). However, if the defendant challenges the sufficiency of the charging document following a verdict, then the charging language must be construed liberally in favor of validity. Id.

Because a challenge to the sufficiency of a charging document involves a question of constitutional due process, Boudrieau can raise it for the first time on appeal. State v. Kjorsvik, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). When an appellant raises such a challenge, the proper standard of review is the two-pronged test. First, the court asks whether the necessary elements appear in any form, or by fair construction can they be found, in the information. Second, if so, the court asks if the defendant can show he or she was actually prejudiced by the inartful language that caused the lack of notice. McCarty, 140 Wn.2d at 425.

The first prong of this test is satisfied when a charging document sets forth all of the essential elements of the crime charged. Id. If the required elements are set forth, even if only in vague terms, then the charging document also satisfies the second prong of the test if the terms used did not result in any actual prejudice to the defendant. Id.

In the instant case, the State charged Boudrieau with robbery in the first degree and alleged in the information that she "did unlawfully take personal

property of another, to wit: drugs and/or US Currency, from the person or in the presence of" Caudill "against such person's will, by use or threatened use of immediate force, violence, and fear of injury" to Caudill.

The statutory definition of robbery is as follows:

A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. *Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking*; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.190 (emphasis added). Boudrieau contends the second sentence of the statute defining robbery is an essential element that was missing in the information.

We have twice considered and rejected this premise. See State v. Derri, 17 Wn. App. 2d 376, 391, 486 P.3d 901, review granted in part, 198 Wn.2d 1017, 497 P.3d 389 (2021);[4] State v. Phillips, 9 Wn. App. 2d 368, 377, 444 P.3d 51, review denied, 194 Wn.2d 1007 (2019). We have held that the first sentence of RCW 9A.56.190 contains the statutory elements of robbery whereas the second sentence merely defines certain terms contained in that first sentence:

The first sentence, which sets forth the statutory elements of robbery, includes the element of "the use or threatened use of immediate force, violence, or fear of injury." The second sentence defines "force" and "fear" as used in sentence one. "*Such force or*

---

[4] We note that our Supreme Court has granted petition for review on "whether the charging document was deficient." State v. Derri, 198 Wn.2d 1017, 497 P.3d 389 (2021).

13

> *fear* must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial." (Emphasis added.) It also defines to "obtain" or "retain" as a form of "take," as used in sentence one.

Phillips, 9 Wn. App. 2d at 377 (quoting RCW 9A.56.190).

In support of her claim, Boudrieau relies on State v. Pry, 194 Wn.2d 745, 751, 452 P.3d 536 (2019) and State v. Johnson, 155 Wn.2d 609, 610–11, 121 P.3d 91 (2005). This is not a new argument we have not previously considered.

Our Supreme Court in Pry examined whether RCW 9A.76.050, entitled "Rendering criminal assistance—Definition of term," either provided the essential elements of the offense or merely defined those elements. 194 Wn.2d at 755-56. The court concluded that the contents of that statutory provision were not merely definitional but rather set forth the essential elements of the offense of rendering criminal assistance. Id. at 763. Likewise, in Phillips, we held that the first sentence of RCW 9A.56.190, which is entitled "Robbery—Definition," contained the statutory elements of robbery. 9 Wn. App. 2d at 377. "[T]he Pry decision expressly acknowledged the principle that '[a] charging document is not required to define essential elements.'" Derri, 17 Wn. App. 2d at 389 (second alteration in original) (quoting Pry, 194 Wn.2d at 752).

> The issue in Johnson was 'whether a robbery conviction can be based upon force used to escape after peaceably-taken property has been abandoned.' The court held that a robbery conviction could not be so based because Washington law incorporates the 'transactional' view of the crime of robbery, meaning 'the force must be used to obtain or retain property, or to prevent or overcome resistance to the taking.'

Derri, 17 Wn. App. 2d at 390 (citation omitted) (quoting Johnson, 155 Wn.2d at 609-10). "In Phillips, we explained that the Johnson 'decision makes clear the relationship between the first and second sentences of RCW 9A.56.190.' Whereas the first sentence provides the essential elements of robbery, the second sentence defines certain terms contained within the first sentence to explain Washington's 'transactional' view of robbery." Derri, 17 Wn. App. 2d at 390 (citation omitted) (quoting Phillips, 9 Wn. App. 2d at 377).[5]

We continue to adhere to our decisions in Derri and Phillips, and hold that the information contained all the essential elements for the crime of robbery in the first degree.[6]

### Legal Financial Obligations

Boudrieau further contends that the trial court only intended to impose mandatory legal financial obligations (LFOs) despite the boilerplate language in

---

[5] We previously have acknowledged that Division Three takes a contrary position in State v. Todd, 200 Wn. App. 879, 403 P.3d 867 (2017) (holding that the statutory elements of robbery include the second sentence of RCW 9A.56.190). In Derri, we explained why we disagree with Todd. Derri, 17 Wn. App. 2d at 390. The Todd court cited State v. Allen, 159 Wn.2d 1, 147 P.3d 581 (2006), which did not announce a new statutory element of robbery but was describing the State's burden of proof in determining whether sufficient evidence supported the conviction. Derri, 17 Wn. App. 2d at 390.

[6] At oral argument, the State additionally argued that even if the second sentence in RCW 9A.56.190 were to be considered an essential element, the information is still not deficient "using the liberal construction test." Wash. Court of Appeals oral argument, State v. Boudrieau, No. 81762-1-I (Mar. 4, 2022), at 11 min., 17 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/watch/?eventID=2022031063. As the State's brief did not address this argument beyond stating the information shall be liberally construed when defendant raises the issue for the first time on appeal, we decline to address it. See RAP 10.3.

the judgment and sentence that ordered community custody supervision fees. We agree.

Supervision fees as a condition of community custody are a discretionary legal financial obligation because they "are waivable by the trial court." State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020). Where the trial court indicated it intended to impose only mandatory LFOs and the record suggests the supervision fees were inadvertently imposed, it is proper to order the fee be stricken from the judgment and sentence. Id. See State v. Bowman, 198 Wn.2d 609, 629, 498 P.3d 478 (2021) (holding that the trial court committed procedural error by imposing a discretionary fee where it had otherwise agreed to waive such fees).

At sentencing, Boudrieau's counsel asked the court "to make a finding of indigency and only impose the mandatory court fees and fines in this case. . ." However, the State asked the court to impose the $500 victim penalty assessment in addition to the $200 filing fee, which may be waived. The court agreed with the defense, stating, "I will find that [Boudrieau] is indigent for the purposes of legal–financial obligations, impose *only* the $500 victim penalty assessment[7] and reserve restitution for 180 days." (Emphasis added.) The record supports that the trial court found Boudrieau indigent and ordered only mandatory LFOs. No one mentioned supervision fees. Just like the judgment and sentence form in Dillon, the judgment and sentence form here included a

---

[7] The $500 victim penalty assessment is a mandatory fee under RCW 7.68.035(1)(a).

lengthy boilerplate paragraph that presumes the court will order the defendant to "[p]ay supervision fees."[8] We order the community custody supervision fees be stricken from the judgment and sentence.

Offender Score

The parties agree that Boudrieau's offender score was based on two prior convictions of possession of a controlled substance that should not be included following State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021). A prior conviction that is constitutionally invalid on its face may not be included in the offender score. State v. Ammons, 105 Wn.2d 175, 187-188, 713 P.2d 719 (1986). We accept the State's concession supporting remand for resentencing to correct the offender score.

Same Criminal Conduct

Lastly, Boudrieau contends that the court should remand to correct the judgment to reflect the trial court's holding that robbery in the first degree and assault in the first degree are the same criminal conduct for sentencing purposes. At sentencing, the trial court held that robbery in the first degree and assault in the first degree were the same criminal conduct for sentencing purposes—however, the judgment and sentence fails to reflect the court's holding. Again, we accept the State's concession that the judgment and

---

[8] The form used was an old form that has since been updated by the Administrative Office of the Courts. The current form now provides a practical way for judges to exercise their discretion regarding supervision fees. Form WPF CR 84.0400P, Felony Judgment and Sentence — Prison (FJS/RJS) (rev. July 2021), https://www.courts.wa.gov/forms/documents/CR84.0400_FJS_Prison_nonsexoffense_2021 %2007.pdf.

sentence should correctly reflect the court's ruling.  We remand for the trial court to accordingly correct the judgment and sentence.

CONCLUSION

We affirm Boudrieau's convictions but remand for resentencing to correct her offender score under <u>Blake</u>, to correct the judgment and sentence by noting that the same criminal conduct supported both convictions, and to strike her community custody supervision fees.

_____ Cohen, J.

WE CONCUR:

_____ Bowman, J.          _____ Andrus, A.C.J.